**Exhibit "A"**

**Fill in this information to identify the case:**

Debtor 1    Corlea H. Ware

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:  Western District of Pennsylvania

Case number 18-20745-JAD

Read the instructions before filling out this form. Use this form to make a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment. A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571. Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Official Form 410
# Proof of Claim

04/16

| **Part 1:** | **Identify the Claim** |
| --- | --- |

**1. Who is the current creditor?**

Wells Fargo Bank, N.A.

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☒ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Wells Fargo Bank, N.A.
Default Document Processing
N9286-01Y

Name

1000 Blue Gentian Road

Number          Street

Eagan MN 55121-7700

City                          State          ZIP Code

Contact phone    800-274-7025

Contact email    POCNOTIFICATIONS@WELLSFARGO.COM

**Where should payments to the creditor be sent?** (if different)

Wells Fargo Bank, N.A.
Attention: Payment Processing
MAC# X2302-04C

Name

1 Home Campus

Number          Street

Des Moines IA 50328

City                          State          ZIP Code

Contact phone    800-274-7025

Contact email    POCNOTIFICATIONS@WELLSFARGO.COM

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

W F C M G E 1 8 2 0 7 4 5 P A W 7 2 6 2 5 9 2 6

**4. Does this claim amend one already filed?**
☒ No
☐ Yes. Claim number on court claims registry (if known) _____ Filed on _____
MM/DD/YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**
☒ No
☐ Yes. Who made the earlier filing? _____

---

**Part 2:   Give Information About the Claim as of the Date the Case Was Filed**

**6. Do you have any number you use to identify the debtor?**
☐ No
☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: 5926

**7. How much is the claim?**
$ 125,952.81   **Does this amount include interest or other charges?**
☐ No
☒ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**
Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

Money Loaned

**9. Is all or part of the claim secured?**
☐ No
☒ Yes.   The claim is secured by a lien on property.

**Nature of property:**
☒ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
☐ Motor vehicle
☐ Other. Describe:     4115 JEFFERSON AVE  HOPEWELL TWP PA 15301-0000

**Basis for perfection:**     Recorded Mortgage/Deed of Trust

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**     $ _____
**Amount of the claim that is secured:**     $ 125,952.81
**Amount of the claim that is unsecured:**     $ _____   (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**   $ 13,203.00

**Annual Interest Rate** (when case was filed)  4.625    %
☒ Fixed
☐ Variable

**10. Is this claim based on a lease?**
☒ No
☐ Yes.   **Amount necessary to cure any default as of the date of the petition.**   $ _____

**11. Is this claim subject to a right of setoff?**
☒ No
☐ Yes.   Identify the property: _____

---

Official Form 410                    **Proof of Claim**                    page 2

| 12. | **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☒ No | | |
| --- | --- | --- | --- | --- |

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Yes. *Check all that apply:*

Amount entitled to priority

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).  $ _____

☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).  $ _____

☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor.s business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).  $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).  $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).  $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies.  $ _____

* Amounts are subject to adjustment on 4/1/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    3/27/2018
                     MM / DD / YYYY

/s/ Thomas Song, Esquire
_____
Signature

**Print the name of the person who is completing and signing this claim:**

Name    Thomas Song, Esq.
        First name          Middle name          Last name

Title    attorney

Company    Phelan Hallinan Diamond & Jones, LLP
           Identify the corporate servicer as the company if the authorized agent is a servicer.

Address    555 Grant Street, Suite 300
           Number        Street
           Pittsburgh, PA 15219
           City                          State      ZIP Code

Contact phone    215-563-7000

Email    Thomas.song@phelanhallinan.com

---

Case 18-20745-JAD   Claim 3   Filed 03/27/18   Page 4 of 21

# Proof of Claim Attachment

...laim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

## ...ge and Case Information

18-20745-JAD

Corlea H. Ware

identify: 5926
See 410 part 1.1

...lly    Wells Fargo Bank, N.A.
other:   Fixed Accrual

## Part 2: Total Debt Calculation

| | |
|---|---|
| Principal balance: | 114,781.28 |
| Interest due: | 6,635.85 |
| Fees, costs due: | 2,782.04 |
| Escrow deficiency for funds advanced: | 1,753.64 |
| Other: | 0.00 |
| Less total funds on hand: | – 0.00 |
| Total debt: | 125,952.81 |

*Not to be used for payoff purposes

## Part 3: Arrearage as of Date of the Petition

| | |
|---|---|
| Principal & interest due: | 7,353.78 |
| Prepetition fees due: | 2,782.04 |
| Escrow deficiency for funds advanced: | 1,753.64 |
| Projected escrow shortage: | 1,313.54 |
| Other: | 0.00 |
| Less funds on hand: | – 0.00 |
| Total prepetition arrearage: | 13,203.00 |

## Part 4: Monthly Mortgage Pa...

| | |
|---|---|
| Principal & interest: | 525.5... |
| Monthly escrow: | 187.6... |
| Private mortgage insurance: | 0.00 |
| Optional Products: | 0.00 |
| Total monthly payment: | 712.5... |

*Additional changes to (monthly) amount may be required because adjustments or escrow ...

## ...ment History from First Date of Default

| C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Beginning Balances | | 0.00 | | | | | | 116,528.93 | | 0.00 | 956.79 |
| 963.97 | | Monthly payment | 05/01/2011 | 763.97 | | | | | | 116,528.93 | | 0.00 | 956.79 |
| | 32.93 | Late Charge | 05/01/2011 | 763.97 | | | | | 32.93 | 116,528.93 | | 0.00 | 956.79 |
| | 71.05 | City tax disbursement | 05/01/2011 | 763.97 | | | | -71.05 | | 116,528.93 | | 0.00 | 885.74 |
| 963.97 | | Monthly payment | 05/01/2011 | 1,527.94 | | | | | | 116,528.93 | | 0.00 | 885.74 |
| | 20.00 | Property inspection fees | 05/01/2011 | 1,527.94 | | | | | 20.00 | 116,528.93 | | 0.00 | 885.74 |
| | 32.93 | Late Charge | 05/01/2011 | 1,527.94 | | | | | 32.93 | 116,528.93 | | 0.00 | 885.74 |
| 963.97 | | Monthly payment | 05/01/2011 | 2,291.91 | | | | | | 116,528.93 | | 0.00 | 885.74 |
| 1,542.86 | | Payment | 06/01/2011 | 1,527.94 | | 136.58 | 521.95 | 112.90 | 0.00 | 116,392.35 | | 0.00 | 998.64 |
| 0.00 | | Payment | 06/01/2011 | 763.97 | | 137.19 | 521.34 | 112.90 | 0.00 | 116,255.16 | | 0.00 | 1,111.54 |
| | 399.25 | Escrow refund | 07/01/2011 | 763.97 | | | | -399.25 | | 116,255.16 | | 0.00 | 712.29 |
| | 32.93 | Late Charge | 07/01/2011 | 763.97 | | | | | 32.93 | 116,255.16 | | 0.00 | 712.29 |
| 963.97 | | Monthly payment | 07/01/2011 | 1,527.94 | | | | | | 116,255.16 | | 0.00 | 712.29 |

**Mortgage Proof of Claim Attachment**

# Proof of Claim Attachment: Additional Page

18-20745-JAD

Cortea H. Ware

### Payment History from First Date of Default

| C. Funds received | D. Amount incurred | E. Description | F. Contractual Prin, int & due date | G. Contractual Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees Charges balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 20.00 | Property inspection fees | 07/01/2011 | 1,527.94 | | | | 20.00 | | 116,255.16 | | 0.00 | 712.29 |
| | 32.93 | Late Charge | 07/01/2011 | 1,527.94 | | | | 32.93 | | 116,255.16 | | 0.00 | 712.29 |
| 63.97 | | Monthly payment | 07/01/2011 | 2,291.91 | | | | | | 116,255.16 | | 0.00 | 712.29 |
| | 515.90 | Other/Sewer/Water/Maintenance Tax | 07/01/2011 | 2,291.91 | | | -515.90 | | | 116,255.16 | | 0.00 | 196.39 |
| | 671.00 | Hazard Insurance Disbursement | 07/01/2011 | 2,291.91 | | | -671.00 | | | 116,255.16 | | 0.00 | -474.61 |
| | 32.93 | Late Charge | 07/01/2011 | 2,291.91 | | | | 32.93 | | 116,255.16 | | 0.00 | -474.61 |
| | 792.94 | Hazard Insurance Disbursement | 07/01/2011 | 2,291.91 | | | -792.94 | | | 116,255.16 | | 0.00 | -1,267.55 |
| | | Monthly payment | 07/01/2011 | 3,055.88 | | | | | | 116,255.16 | | 0.00 | -1,267.55 |
| 63.97 | 20.00 | Property inspection fees | 07/01/2011 | 3,055.88 | | | | 20.00 | | 116,255.16 | | 0.00 | -1,267.55 |
| 800.00 | | Payment | 07/01/2011 | 3,055.88 | 0.00 | 0.00 | 0.00 | | 800.00 | 116,255.16 | | 0.00 | -1,267.55 |
| 0.00 | | Payment | 07/01/2011 | 2,291.91 | 137.80 | 520.73 | 112.90 | | -771.43 | 116,117.36 | | 0.00 | -1,154.65 |
| | 32.93 | Late Charge | 08/01/2011 | 2,291.91 | | | | 32.93 | | 116,117.36 | | 0.00 | -1,154.65 |
| 63.97 | | Monthly payment | 08/01/2011 | 3,055.88 | | | | | | 116,117.36 | | 0.00 | -1,154.65 |
| | 20.00 | Property inspection fees | 08/01/2011 | 3,055.88 | | | | 20.00 | | 116,117.36 | | 0.00 | -1,154.65 |
| | 32.93 | Late Charge | 08/01/2011 | 3,055.88 | | | | 32.93 | | 116,117.36 | | 0.00 | -1,154.65 |
| 63.97 | | Monthly payment | 08/01/2011 | 3,819.85 | | | | | | 116,117.36 | | 0.00 | -1,154.65 |
| | 225.00 | Title costs | 08/01/2011 | 3,819.85 | | | | 225.00 | | 116,117.36 | | 0.00 | -1,154.65 |
| 63.97 | 5.00 | Foreclosure service fees (Other) | 08/01/2011 | 3,819.85 | | | | 5.00 | | 116,117.36 | | 0.00 | -1,154.65 |
| 671.00 | | Hazard refund deposit | 08/01/2011 | 3,819.85 | 0.00 | 0.00 | 671.00 | | | 116,117.36 | | 0.00 | -483.65 |
| | 20.00 | Property inspection fees | 08/01/2011 | 3,819.85 | | | | 20.00 | | 116,117.36 | | 0.00 | -483.65 |

**Mortgage Proof of Claim Attachment**

Proof of Claim Attachment: Additional Page

18-20745-JAD

Coftea H. Ware

Payment History from First Date of Default

| C. Funds received | D. Amount incurred | E. Description | F. Contractual Prin, int & due date | G. Contractual Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees or Charges balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 763.97 | | Monthly payment | 08/01/2011 | 4,583.82 | 4,583.82 | | | | | | | | -483.65 |
| | 399.25 | Escrow deposit | 08/01/2011 | 4,583.82 | | 0.00 | 0.00 | 399.25 | 0.00 | 0.00 | | 0.00 | -84.40 |
| | 20.00 | Property inspection fees | 08/01/2011 | 4,583.82 | | | | 20.00 | | | | 0.00 | -84.40 |
| | 108.00 | Filing fees and court costs | 08/01/2011 | 4,583.82 | | | | 108.00 | | | | 0.00 | -84.40 |
| 763.97 | | Monthly payment | 08/01/2011 | 5,347.79 | 4,583.82 | | | | | 116,117.36 | 116,117.36 | 0.00 | -84.40 |
| 697.50 | | Payment | 08/01/2011 | 5,347.79 | | 0.00 | 0.00 | 0.00 | 697.50 | 116,117.36 | 116,117.36 | 0.00 | -84.40 |
| | -230.51 | Late Charge | 08/01/2011 | 5,347.79 | | | | -230.51 | | 116,117.36 | 116,117.36 | 0.00 | -84.40 |
| | -80.00 | Property inspection fees | 08/01/2011 | 5,347.79 | | | | -80.00 | | 116,117.36 | 116,117.36 | 0.00 | -84.40 |
| 1,613.08 | | Payment | 08/01/2011 | 5,347.79 | | 0.00 | 0.00 | 0.00 | 1,613.08 | 116,117.36 | 116,117.36 | 0.00 | -84.40 |
| 0.00 | | Undefined Category | 08/01/2011 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 116,117.36 | 116,117.36 | 0.00 | -84.40 |
| 0.00 | | Non-Cash Balance Adj | 03/01/2012 | 0.00 | -5,240.73 | | | 0.00 | 0.00 | 121,358.09 | 121,358.09 | 0.00 | -84.40 |
| 0.00 | | Payment | 03/01/2012 | 0.00 | 0.00 | 0.00 | 0.00 | 483.65 | -1,483.64 | 121,358.09 | 121,358.09 | 0.00 | 399.25 |
| 0.00 | | Payment | 03/01/2012 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -158.01 | 121,358.09 | 121,358.09 | 0.00 | 399.25 |
| -999.99 | | FCL REINSTATMENT | 03/01/2012 | 0.00 | 0.00 | | | -999.99 | | 121,358.09 | 121,358.09 | 0.00 | 399.25 |
| -158.01 | | FCL REINSTATMENT | 03/01/2012 | 0.00 | 0.00 | | | -158.01 | | 121,358.09 | 121,358.09 | 0.00 | 399.25 |
| 697.50 | | Payment | 03/01/2012 | 0.00 | 87.64 | 0.00 | 467.73 | 142.13 | -697.50 | 121,270.45 | 121,270.45 | 0.00 | 541.38 |
| 763.97 | | Monthly payment | 04/01/2012 | 0.00 | 0.00 | | | | | 121,270.45 | 121,270.45 | 0.00 | 541.38 |
| | 147.44 | County tax disbursement | 04/01/2012 | 0.00 | 0.00 | | -147.44 | | | 121,270.45 | 121,270.45 | 0.00 | 393.94 |
| 763.97 | | Monthly payment | 04/01/2012 | 763.97 | 763.97 | 87.97 | 467.40 | 142.13 | | 121,270.45 | 121,270.45 | 0.00 | 393.94 |
| 697.50 | | Payment | 04/01/2012 | 0.00 | 0.00 | | | | 0.00 | 121,182.48 | 121,182.48 | 0.00 | 536.07 |
| 763.97 | | Monthly payment | 05/01/2012 | 763.97 | 763.97 | | | | | 121,182.48 | 121,182.48 | 0.00 | 536.07 |

**Mortgage Proof of Claim Attachment**

# Proof of Claim Attachment: Additional Page

18-20745-JAD

Coriea H. Ware

**Payment History from First Date of Default**

| | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | C. Funds received | D. Amount incurred | E. Description | F. Contractual Prin, int & due date | G. Contractual Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees Charges balance |
| | 690.35 | | Payment | 05/01/2012 | 0.00 | 0.00 | 88.31 | 467.06 | 134.98 | | 0.00 | 121,094.17 | 0.00 | 671.05 |
| | 780.00 | | Payment | 06/01/2012 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 780.00 | 780.00 | 121,094.17 | 0.00 | 671.05 |
| | | 780.00 | CLR MORT REC BAL | 06/01/2012 | 0.00 | 0.00 | | | 780.00 | 780.00 | | 121,094.17 | 0.00 | 671.05 |
| | 0.00 | 71.05 | City tax disbursement | 06/01/2012 | 0.00 | 0.00 | 780.00 | 0.00 | -71.05 | -780.00 | -780.00 | 120,314.17 | 0.00 | 600.00 |
| 763.97 | | | Monthly payment | 06/01/2012 | 763.97 | 0.00 | | | | | | 120,314.17 | 0.00 | 600.00 |
| | 690.35 | | Payment | 06/01/2012 | 0.00 | 91.66 | 463.71 | | 134.98 | | 0.00 | 120,222.51 | 0.00 | 734.98 |
| | | 898.66 | Hazard Insurance Disbursement | 07/01/2012 | 0.00 | 0.00 | | | -898.66 | | | 120,222.51 | 0.00 | -163.68 |
| 763.97 | | | Monthly payment | 07/01/2012 | 763.97 | 0.00 | | | | | | 120,222.51 | 0.00 | -163.68 |
| | 690.35 | | Payment | 07/01/2012 | 0.00 | 92.01 | 463.36 | | 134.98 | | | 120,130.50 | 0.00 | -28.70 |
| 763.97 | | | Monthly payment | 08/01/2012 | 763.97 | 0.00 | | | | | | 120,130.50 | 0.00 | -28.70 |
| | 690.35 | | Payment | 08/01/2012 | 0.00 | 92.37 | 463.00 | | 134.98 | | 0.00 | 120,038.13 | 0.00 | 106.28 |
| 763.97 | | | Monthly payment | 09/01/2012 | 763.97 | 0.00 | | | | | | 120,038.13 | 0.00 | 106.28 |
| | 690.35 | | Payment | 09/01/2012 | 0.00 | 92.72 | 462.65 | | 134.98 | | 0.00 | 119,945.41 | 0.00 | 241.26 |
| | | 516.85 | Other/Sewer/Water/Maintenance Tax | 10/01/2012 | 0.00 | 0.00 | | | -516.85 | | | 119,945.41 | 0.00 | -275.59 |
| | 109.46 | | Attorney's fees | 10/01/2012 | 0.00 | 0.00 | | | | -109.46 | -109.46 | 119,945.41 | 0.00 | -275.59 |
| 763.97 | | | Monthly payment | 10/01/2012 | 763.97 | 0.00 | | | 134.98 | | | 119,945.41 | 0.00 | -275.59 |
| | 690.35 | | Payment | 10/01/2012 | 0.00 | 93.08 | 462.29 | | 134.98 | | 0.00 | 119,852.33 | 0.00 | -140.61 |
| | 109.46 | | Payment | 11/01/2012 | 0.00 | 0.00 | | | 0.00 | 109.46 | 109.46 | 119,852.33 | 0.00 | -140.61 |
| | | 109.46 | CLR MORT REC BAL | 11/01/2012 | 0.00 | 0.00 | | | | 109.46 | 109.46 | 119,852.33 | 0.00 | -140.61 |
| | 0.00 | | Payment | 11/01/2012 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -109.46 | -109.46 | 119,742.87 | 0.00 | -140.61 |
| 763.97 | | | Monthly payment | 11/01/2012 | 763.97 | 0.00 | | | | | | 119,742.87 | 0.00 | -140.61 |
| | 690.35 | | Payment | 11/01/2012 | 0.00 | 93.86 | 461.51 | | 134.98 | | 0.00 | 119,649.01 | 0.00 | -5.63 |

**Mortgage Proof of Claim Attachment**

## Proof of Claim Attachment: Additional Page

18-20745-JAD

Cortea H. Ware

### Payment History from First Date of Default

| | Account Activity | | | How Funds Were Applied/Amount Incurred | | | | | | | Balance After Amount Received or Incurred | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | |
| **C.** Funds received | **D.** Amount incurred | **E.** Description | **F.** Contractual due date | **G.** Contractual Prin, int & esc past due balance | **H.** Amount to principal | **I.** Amount to interest | **J.** Amount to escrow | **K.** Amount to fees or charges | **L.** Unapplied funds | **M.** Principal balance | **N.** Accrued interest balance | **O.** Escrow balance | **P.** Fees Charges balance |
| 00.73 | | Monthly payment | 12/01/2012 | 700.73 | 700.73 | | | | | 119,649.01 | | 0.00 | -5.63 |
| | 690.35 | Payment | 12/01/2012 | 700.73 | 94.22 | 461.15 | | 134.98 | 0.00 | 119,554.79 | | 0.00 | 129.35 |
| | 0.00 | Reversal | 12/01/2012 | 700.73 | -94.22 | -461.15 | | -134.98 | 0.00 | 119,649.01 | | 0.00 | -5.63 |
| | 27.77 | Late Charge | 12/01/2012 | 700.73 | | | | 27.77 | | 119,649.01 | | 0.00 | -5.63 |
| | 50.00 | Non-sufficient funds (NSF) fees | 12/01/2012 | 700.73 | | | | 50.00 | | 119,649.01 | | 0.00 | -5.63 |
| 00.73 | | Monthly payment | 12/01/2012 | 1,401.46 | | | | | | 119,649.01 | | 0.00 | -5.63 |
| | 27.77 | Late Charge | 12/01/2012 | 1,401.46 | | | | 27.77 | | 119,649.01 | | 0.00 | 1 |
| | 15.00 | Property inspection fees | 12/01/2012 | 1,401.46 | | | | 15.00 | | 119,649.01 | | 0.00 | 1 |
| 00.73 | | Monthly payment | 12/01/2012 | 2,102.19 | | | | | | 119,649.01 | | 0.00 | -5.63 |
| | 27.77 | Late Charge | 12/01/2012 | 2,102.19 | | | | 27.77 | | 119,649.01 | | 0.00 | -5.63 |
| | 15.00 | Property inspection fees | 12/01/2012 | 2,102.19 | | | | 15.00 | | 119,649.01 | | 0.00 | -5.63 |
| 00.73 | | Monthly payment | 12/01/2012 | 2,802.92 | | | | | | 119,649.01 | | 0.00 | -5.63 |
| | 147.44 | County tax disbursement | 12/01/2012 | 2,802.92 | | | -147.44 | | | 119,649.01 | | 0.00 | -153.07 |
| | 27.77 | Late Charge | 12/01/2012 | 2,802.92 | | | | 27.77 | | 119,649.01 | | 0.00 | -153.07 |
| | 125.00 | Title costs | 12/01/2012 | 2,802.92 | | | | 125.00 | | 119,649.01 | | 0.00 | -153.07 |
| 00.73 | | Monthly payment | 12/01/2012 | 3,503.65 | | | | | | 119,649.01 | | 0.00 | -153.07 |
| | 15.00 | Property inspection fees | 12/01/2012 | 3,503.65 | | | | 15.00 | | 119,649.01 | | 0.00 | -153.07 |
| | 108.00 | Filing fees and court costs | 12/01/2012 | 4,204.38 | | | | 108.00 | | 119,649.01 | | 0.00 | -153.07 |
| 00.73 | | Monthly payment | 12/01/2012 | 4,204.38 | | | | | | 119,649.01 | | 0.00 | -153.07 |
| | -15.00 | Property inspection fees | 12/01/2012 | 4,204.38 | 0.00 | 0.00 | 0.00 | -15.00 | 0.00 | 119,649.01 | | 0.00 | -153.07 |

**Mortgage Proof of Claim Attachment**

# Proof of Claim Attachment: Additional Page

18-20745-JAD

Cortea H. Ware

**...ment History from First Date of Default**

| | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | C. Funds received | D. Amount incurred | E. Description | F. Contractual Prin, int & esc due date | G. Contractual Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees/ Charges balance |
| | | 330.00 | Attorney's fees | 12/01/2012 | 4,204.38 | | | | | 330.00 | 119,649.01 | | 0.00 | -153.07 |
| | | 47.37 | City tax disbursement | 12/01/2012 | 4,204.38 | | 0.00 | | -47.37 | 0.00 | 119,649.01 | | 0.00 | -200.44 |
| | 700.73 | | Monthly payment | 12/01/2012 | 4,905.11 | | | | | | 119,649.01 | | 0.00 | -200.44 |
| | 700.73 | | Monthly payment | 12/01/2012 | 5,605.84 | | | | | | 119,649.01 | | 0.00 | -200.44 |
| | | 920.89 | Hazard Insurance Disbursement | 12/01/2012 | 5,605.84 | | 0.00 | | -920.89 | | 119,649.01 | | 0.00 | -1,121.33 |
| | | 920.89 | Hazard Insurance Disbursement | 12/01/2012 | 5,605.84 | | 0.00 | | -920.89 | | 119,649.01 | | 0.00 | -2,042.22 |
| | | 920.89 | Hazard refund deposit | 12/01/2012 | 5,605.84 | | | | 920.89 | 0.00 | 119,649.01 | | 0.00 | -1,121.33 |
| | | 330.00 | Attorney's fees | 12/01/2012 | 5,605.84 | | | | | 330.00 | 119,649.01 | | 0.00 | -1,121.33 |
| | 700.73 | | Monthly payment | 12/01/2012 | 6,306.57 | | | | | | 119,649.01 | | 0.00 | -1,121.33 |
| | 700.73 | | Monthly payment | 12/01/2012 | 7,007.30 | | | | | | 119,649.01 | | 0.00 | -1,121.33 |
| | | 514.36 | Other/Sewer/Water/Maintenance Tax | 12/01/2012 | 7,007.30 | | 0.00 | | -514.36 | | 119,649.01 | | 0.00 | -1,635.69 |
| | 1,482.67 | | Payment | 12/01/2012 | 7,007.30 | 0.00 | 0.00 | 0.00 | 0.00 | 1,482.67 | 119,649.01 | | 0.00 | -1,635.69 |
| | 700.73 | | Payment | 12/01/2012 | 6,306.57 | 94.22 | 461.15 | 0.00 | 145.36 | 0.00 | 119,554.79 | | 0.00 | -1,490.33 |
| | 700.73 | | Payment | 01/01/2013 | 5,605.84 | 94.59 | 460.78 | 0.00 | 145.36 | 0.00 | 119,460.20 | | 0.00 | -1,344.97 |
| | 700.73 | | Payment | 02/01/2013 | 4,905.11 | 94.95 | 460.42 | 0.00 | 145.36 | 0.00 | 119,365.25 | | 0.00 | -1,199.61 |
| | 700.73 | | Payment | 03/01/2013 | 4,204.38 | 95.32 | 460.05 | 0.00 | 145.36 | 0.00 | 119,269.93 | | 0.00 | -1,054.25 |
| | 700.73 | | Payment | 04/01/2013 | 3,503.65 | 95.68 | 459.69 | 0.00 | 145.36 | 0.00 | 119,174.25 | | 0.00 | -908.89 |
| | 700.73 | | Payment | 05/01/2013 | 2,802.92 | 96.05 | 459.32 | 0.00 | 145.36 | 0.00 | 119,078.20 | | 0.00 | -763.53 |
| | 700.73 | | Payment | 06/01/2013 | 2,102.19 | 96.42 | 458.95 | 0.00 | 145.36 | 0.00 | 118,981.78 | | 0.00 | -618.17 |
| | 700.73 | | Payment | 07/01/2013 | 1,401.46 | 96.79 | 458.58 | 0.00 | 145.36 | 0.00 | 118,884.99 | | 0.00 | -472.81 |
| | 700.73 | | Payment | 08/01/2013 | 700.73 | 97.17 | 458.20 | 0.00 | 145.36 | 0.00 | 118,787.82 | | 0.00 | -327.45 |
| | 2,294.46 | | Payment | 09/01/2013 | 0.00 | 97.54 | 457.83 | 0.00 | 145.36 | 0.00 | 118,690.28 | | 0.00 | -182.09 |

**Mortgage Proof of Claim Attachment**

**Proof of Claim Attachment: Additional Page**

18-20745-JAD
Cortea H. Ware

**Payment History from First Date of Default**

| Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees Charges balance |
| 0.00 | | Payment | 10/01/2013 | 0.00 | 0.00 | 97.92 | 457.45 | 145.36 | 0.00 | 118,592.36 | | 0.00 | -36.73 |
| 111.08 | | Payment | 11/01/2013 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -111.08 | 118,592.36 | | 0.00 | -36.73 |
| 50.00 | | Payment | 11/01/2013 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -50.00 | 118,592.36 | | 0.00 | -36.73 |
| 30.00 | | Payment | 11/01/2013 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -30.00 | 118,592.36 | | 0.00 | -36.73 |
| | -520.00 | Attorney's fees | 11/01/2013 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -520.00 | 118,592.36 | | 0.00 | -36.73 |
| 520.00 | | Payment | 11/01/2013 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -520.00 | 118,592.36 | | 0.00 | -36.73 |
| | -893.00 | FCL REINSTATMENT | 11/01/2013 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -893.00 | 117,109.69 | | 0.00 | -36.73 |
| 0.00 | | Payment | 11/01/2013 | 0.00 | 1,482.67 | 0.00 | 0.00 | 0.00 | -1,482.67 | 117,109.69 | | 0.00 | -36.73 |
| 700.73 | | Monthly payment | 11/01/2013 | 0.00 | 0.00 | | | | | 117,109.69 | | 0.00 | -36.73 |
| | 50.00 | Attorney's fees | 11/01/2013 | 0.00 | 0.00 | | | 50.00 | | 117,109.69 | | 0.00 | -36.73 |
| 700.73 | | Monthly payment | 11/01/2013 | 700.73 | 700.73 | | | | | 117,109.69 | | 0.00 | -36.73 |
| 700.73 | | Payment | 11/01/2013 | 700.73 | 700.73 | 104.01 | 451.36 | 145.36 | | 117,005.68 | | 0.00 | 108.63 |
| 0.00 | | Reversal | 11/01/2013 | 700.73 | 700.73 | -104.01 | -451.36 | -145.36 | | 117,005.68 | | 0.00 | -36.73 |
| 0.00 | | Undefined Category | 11/01/2013 | 0.00 | 0.00 | | | | 0.00 | 117,005.68 | | 0.00 | -36.73 |
| | 27.77 | Late Charge | 12/01/2013 | 0.00 | 0.00 | | | | 27.77 | 117,005.68 | | 0.00 | -36.73 |
| | 50.00 | Non-sufficient funds (NSF) fees | 12/01/2013 | 0.00 | 0.00 | | | | 50.00 | 117,005.68 | | 0.00 | -36.73 |
| 700.73 | | Monthly payment | 12/01/2013 | 700.73 | 700.73 | | | | | 117,005.68 | | 0.00 | -36.73 |
| 700.73 | | Payment | 12/01/2013 | 700.73 | 700.73 | 104.01 | 451.36 | 145.36 | | 117,005.68 | | 0.00 | 108.63 |
| | 27.77 | Late Charge | 12/01/2013 | 700.73 | | | | | 27.77 | 117,005.68 | | 0.00 | 108.63 |
| 700.07 | | Monthly payment | 12/01/2013 | 1,400.80 | | | | | | 117,005.68 | | 0.00 | 108.63 |
| | 27.77 | Late Charge | 12/01/2013 | 1,400.80 | | | | | 27.77 | 117,005.68 | | 0.00 | 108.63 |
| 700.07 | | Monthly payment | 12/01/2013 | 2,100.87 | | | | | | 117,005.68 | | 0.00 | 108.63 |
| | 27.77 | Late Charge | 12/01/2013 | 2,100.87 | | | | | 27.77 | 117,005.68 | | 0.00 | 108.63 |

**Mortgage Proof of Claim Attachment**

# Proof of Claim Attachment: Additional Page

18-20745-JAD
Corlea H. Ware

**Payment History from First Date of Default**

| | Account Activity | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| C. Funds received | D. Amount incurred | E. Description | F. Contractual Prin, int & due date | G. Contractual Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees/Charges balance |
| | 147.43 | County tax disbursement | 12/01/2013 | 2,100.87 | | 0.00 | 0.00 | -147.43 | 0.00 | | 117,005.68 | 0.00 | -38.80 |
| 00.07 | | Monthly payment | 12/01/2013 | 2,800.94 | | | | | | | 117,005.68 | 0.00 | -38.80 |
| | 0.00 | Undefined Category | 12/01/2013 | 0.00 | | 0.00 | 0.00 | 0.00 | | | 117,005.68 | 0.00 | -38.80 |
| | 27.77 | Late Charge | 07/01/2014 | 0.00 | | | | 27.77 | | | 117,005.68 | 0.00 | -38.80 |
| 00.07 | | Monthly payment | 07/01/2014 | 0.00 | | | | | | | 117,005.68 | 0.00 | -38.80 |
| | 495.00 | Attorney/s fees | 07/01/2014 | 0.00 | | | | 495.00 | | | 117,005.68 | 0.00 | -38.80 |
| | 125.00 | Title costs | 07/01/2014 | 0.00 | | | | 125.00 | | | 117,005.68 | 0.00 | -38.80 |
| | 108.00 | Filing fees and court costs | 07/01/2014 | 0.00 | | | | 108.00 | | | 117,005.68 | 0.00 | -38.80 |
| 00.07 | | Monthly payment | 07/01/2014 | 0.00 | | | | | | | 117,005.68 | 0.00 | -38.80 |
| | 47.37 | City tax disbursement | 07/01/2014 | 4,201.08 | | 0.00 | 0.00 | -47.37 | | | 117,005.68 | 0.00 | -86.17 |
| | 330.00 | Attorney/s fees | 12/01/2013 | 4,201.08 | | | | 330.00 | | | 117,005.68 | 0.00 | -86.17 |
| 700.73 | | Payment | 12/01/2013 | 3,500.35 | 104.41 | 450.96 | 145.36 | | | 116,901.27 | 0.00 | 59.19 |
| 4,200.42 | | Payment | 01/01/2014 | 2,800.28 | 104.81 | 450.56 | 144.70 | | | 116,796.46 | 0.00 | 203.89 |
| 0.00 | | Payment | 02/01/2014 | 2,100.21 | 105.22 | 450.15 | 144.70 | | | 116,691.24 | 0.00 | 348.59 |
| 0.00 | | Payment | 03/01/2014 | 1,400.14 | 105.62 | 449.75 | 144.70 | | | 116,585.62 | 0.00 | 493.29 |
| 0.00 | | Payment | 04/01/2014 | 700.07 | 106.03 | 449.34 | 144.70 | | | 116,479.59 | 0.00 | 637.99 |
| 0.00 | | Payment | 05/01/2014 | 0.00 | 106.44 | 448.93 | 144.70 | | | 116,373.15 | 0.00 | 782.69 |
| 0.00 | | Payment | 06/01/2014 | 0.00 | 106.85 | 448.52 | 144.70 | | | 116,266.30 | 0.00 | 927.39 |
| 50.00 | | Payment | 07/01/2014 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 50.00 | 116,266.30 | 0.00 | 927.39 |
| 00.07 | | Monthly payment | 07/01/2014 | 0.00 | 0.00 | | | | | 116,266.30 | 0.00 | 927.39 |
| | 330.00 | Attorney/s fees | 07/01/2014 | 0.00 | 0.00 | | | 330.00 | | 116,266.30 | 0.00 | 927.39 |
| | 2,000.00 | Sheriff/auctioneer fees | 07/01/2014 | 0.00 | 0.00 | | | 2,000.00 | | 116,266.30 | 0.00 | 927.39 |
| | -2,330.00 | Attorney costs (Other) | 07/01/2014 | 0.00 | 0.00 | 0.00 | 0.00 | -2,330.00 | 0.00 | 116,266.30 | 0.00 | 927.39 |

**Mortgage Proof of Claim Attachment**

# Proof of Claim Attachment: Additional Page

18-20745-JAD

Cortea H. Ware

**Payment History from First Date of Default**

| | Account Activity | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| C. Funds received | D. Amount incurred | E. Description | F. Contractual Prin, int & esc past due date | G. Contractual Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance |
| 138.85 | | Payment | 07/01/2014 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -138.85 | 0.00 | | 0.00 | 927.39 |
| | -7.00 | Attorney's fees | 07/01/2014 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -7.00 | 116,266.30 | | 0.00 | 927.39 |
| | -588.00 | FCL REINSTATMENT | 07/01/2014 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -588.00 | 116,266.30 | | 0.00 | 927.39 |
| 588.00 | | Payment | 07/01/2014 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 116,266.30 | | 0.00 | 927.39 |
| | -50.00 | Non-sufficient funds (NSF) fees | 08/01/2014 | 0.00 | 0.00 | 50.00 | | | -50.00 | | | 0.00 | 927.39 |
| 0.00 | | Payment | 08/01/2014 | 0.00 | 50.00 | 0.00 | 0.00 | 0.00 | | 116,216.30 | | 0.00 | 927.39 |
| | 7.00 | Filing fees and court costs | 08/01/2014 | 0.00 | | | | | 7.00 | 116,216.30 | | 0.00 | 927.39 |
| 700.07 | | Monthly payment | 08/01/2014 | 700.07 | | | | | | | | 0.00 | 927.39 |
| | 969.16 | Hazard Insurance Disbursement | 08/01/2014 | 0.00 | 0.00 | 0.00 | 0.00 | -969.16 | | 116,216.30 | | 0.00 | -41.77 |
| 700.07 | | Payment | 08/01/2014 | 0.00 | 107.45 | 447.92 | 0.00 | 144.70 | | 116,108.85 | | 0.00 | 102.93 |
| | 0.00 | Reversal | 08/01/2014 | 0.00 | -107.45 | -447.92 | 0.00 | -144.70 | | 116,216.30 | | 0.00 | -41.77 |
| 700.07 | | Payment | 08/01/2014 | 0.00 | 107.45 | 447.92 | 0.00 | 144.70 | | 116,108.85 | | 0.00 | 102.93 |
| 700.07 | | Monthly payment | 08/01/2014 | 700.07 | | | | | | | | 0.00 | 102.93 |
| | 27.77 | Late Charge | 08/01/2014 | 700.07 | | | | | 27.77 | 116,108.85 | | 0.00 | 102.93 |
| 700.07 | | Monthly payment | 08/01/2014 | 1,400.14 | | | | | | 116,108.85 | | 0.00 | 102.93 |
| | 522.30 | Other/Sewer/Water/Maintenance Tax | 08/01/2014 | 1,400.14 | 0.00 | 0.00 | 0.00 | -522.30 | | | | 0.00 | -419.37 |
| | 27.77 | Late Charge | 08/01/2014 | 1,400.14 | | | | | 27.77 | 116,108.85 | | 0.00 | -419.37 |
| 700.07 | | Monthly payment | 08/01/2014 | 2,100.21 | | | | | | 116,108.85 | | 0.00 | -419.37 |
| | 0.00 | Undefined Category | 08/01/2014 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 116,108.85 | | 0.00 | -419.37 |
| | 27.77 | Late Charge | 01/01/2015 | 0.00 | | | | | 27.77 | | | 0.00 | -419.37 |
| 700.07 | | Monthly payment | 01/01/2015 | 0.00 | | | | | | 116,108.85 | | 0.00 | -419.37 |
| 2,883.59 | | Payment | 01/01/2015 | 2,100.21 | 107.87 | 447.50 | 0.00 | 144.70 | -83.31 | 116,000.98 | | 0.00 | -274.67 |

**Mortgage Proof of Claim Attachment**

# Proof of Claim Attachment: Additional Page

18-20745-JAD
Cortea H. Ware

### Payment History from First Date of Default

| C. Funds received | D. Amount incurred | E. Description | F. Contractual Prin, int & due date | G. Prin, int & esc past due balance | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees or Charges balance |
| 0.00 | 0.00 | Payment | 09/01/2014 | 1,400.14 | 108.28 | 447.09 | 144.70 | | | 115,892.70 | | 0.00 | -129.97 |
| 0.00 | 0.00 | Payment | 10/01/2014 | 700.07 | 108.70 | 446.67 | 144.70 | | | 115,784.00 | | 0.00 | 14.73 |
| 0.00 | 0.00 | Payment | 11/01/2014 | 0.00 | 109.12 | 446.25 | 144.70 | | | 115,674.88 | | 0.00 | 159.43 |
| | | Monthly payment | 12/01/2014 | 700.07 | 0.00 | | | | | 115,674.88 | | 0.00 | 159.43 |
| 700.07 | 700.07 | Payment | 12/01/2014 | 0.00 | 109.54 | 445.83 | 144.70 | | | 115,565.34 | | 0.00 | 304.13 |
| | | Monthly payment | 01/01/2015 | 706.97 | 0.00 | 0.00 | 0.00 | 0.00 | | 115,565.34 | | 0.00 | 304.13 |
| 0.00 | | Undefined Category | 01/01/2015 | 0.00 | | | 0.00 | | 27.77 | 115,565.34 | | 0.00 | 304.13 |
| | 27.77 | Late Charge | 02/01/2015 | 0.00 | | | | | | 115,565.34 | | 0.00 | 304.13 |
| | | Monthly payment | 02/01/2015 | 706.97 | | | | | | 115,565.34 | | 0.00 | 304.13 |
| 734.74 | | Payment | 02/01/2015 | 0.00 | 109.96 | 445.41 | 151.60 | | -27.77 | 115,455.38 | | 0.00 | 455.73 |
| 0.00 | | Undefined Category | 02/01/2015 | 0.00 | 0.00 | 0.00 | 0.00 | | 27.77 | 115,455.38 | | 0.00 | 455.73 |
| | 27.77 | Late Charge | 04/01/2015 | 0.00 | | | | | | 115,455.38 | | 0.00 | 455.73 |
| | | Monthly payment | 04/01/2015 | 1,413.94 | | | | | | 115,455.38 | | 0.00 | 455.73 |
| 0.00 | 147.44 | County tax disbursement | 04/01/2015 | 706.97 | 0.00 | 0.00 | -147.44 | | | 115,455.38 | | 0.00 | 308.29 |
| 1,441.71 | | Payment | 02/01/2015 | 0.00 | 110.39 | 444.98 | 151.60 | | -27.77 | 115,344.99 | | 0.00 | 459.89 |
| 0.00 | | Payment | 03/01/2015 | 706.97 | 110.81 | 444.56 | 151.60 | | | 115,234.18 | | 0.00 | 611.49 |
| | | Monthly payment | 04/01/2015 | 706.97 | | | | | | 115,234.18 | | 0.00 | 611.49 |
| | 27.77 | Late Charge | 04/01/2015 | 1,413.94 | | | | | 27.77 | 115,234.18 | | 0.00 | 611.49 |
| | | Monthly payment | 04/01/2015 | 1,413.94 | 0.00 | 0.00 | 0.00 | | | 115,234.18 | | 0.00 | 611.49 |
| | 47.37 | City tax disbursement | 04/01/2015 | 1,413.94 | 0.00 | 0.00 | -47.37 | | | 115,234.18 | | 0.00 | 564.12 |
| | 27.77 | Late Charge | 04/01/2015 | 1,413.94 | | | | | 27.77 | 115,234.18 | | 0.00 | 564.12 |
| | | Monthly payment | 04/01/2015 | 2,120.91 | | | | | | 115,234.18 | | 0.00 | 564.12 |
| | 27.77 | Late Charge | 04/01/2015 | 2,120.91 | | | | | 27.77 | 115,234.18 | | 0.00 | 564.12 |

**Mortgage Proof of Claim Attachment**

Proof of Claim Attachment: Additional Page

Proof of Claim Attachment: Additional Page

18-20745-JAD

Coftea H. Ware

Payment History from First Date of Default

**Mortgage Proof of Claim Attachment**

| | Account Activity | | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | |
| | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. |
| | Funds received | Amount incurred | Description | Contractual Prin, int & due date | Contractual Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 06.97 | | Monthly payment | 04/01/2015 | 2,827.88 | | | | | | 115,234.18 | 115,234.18 | 0.00 | 564.12 |
| | | 977.38 | Hazard Insurance Disbursement | 04/01/2015 | 2,827.88 | | 0.00 | -977.38 | | 0.00 | 115,234.18 | 115,234.18 | 0.00 | -413.26 |
| | | 27.77 | Late Charge | 04/01/2015 | 2,827.88 | | | | 27.77 | | 115,234.18 | 115,234.18 | 0.00 | -413.26 |
| | 06.97 | | Monthly payment | 04/01/2015 | 3,534.85 | | | | | | 115,234.18 | 115,234.18 | 0.00 | -413.26 |
| | | 2,938.96 | Payment | 04/01/2015 | 2,827.88 | 0.00 | 0.00 | 0.00 | | 2,938.96 | 115,234.18 | 115,234.18 | 0.00 | -413.26 |
| | 0.00 | | Payment | 04/01/2015 | 2,827.88 | 111.24 | 444.13 | 151.60 | | -2,827.88 | 115,122.94 | 115,122.94 | 0.00 | -261.66 |
| | 0.00 | | Payment | 05/01/2015 | 2,827.88 | 0.00 | 0.00 | 0.00 | -111.08 | -111.00 | 115,122.94 | 115,122.94 | 0.00 | -261.66 |
| | 0.00 | | Payment | 05/01/2015 | 2,120.91 | 111.67 | 443.70 | 151.60 | | 0.00 | 115,011.27 | 115,011.27 | 0.00 | -110.06 |
| | 0.00 | | Payment | 06/01/2015 | 1,413.94 | 112.10 | 443.27 | 151.60 | | 0.00 | 114,899.17 | 114,899.17 | 0.00 | 41.54 |
| | 0.00 | | Payment | 07/01/2015 | 706.97 | 112.53 | 442.84 | 151.60 | | 0.00 | 114,786.64 | 114,786.64 | 0.00 | 193.14 |
| | 06.97 | | Monthly payment | 08/01/2015 | 1,413.94 | | | | | | 114,786.64 | 114,786.64 | 0.00 | 193.14 |
| | | 516.87 | Other/Sewer/Water/Maintenance Tax | 08/01/2015 | 1,413.94 | 0.00 | 0.00 | -516.87 | | 0.00 | 114,786.64 | 114,786.64 | 0.00 | -323.73 |
| | 06.97 | | Monthly payment | 08/01/2015 | 2,120.91 | | | | | | 114,766.64 | 114,766.64 | 0.00 | -323.73 |
| | 2,120.91 | | Payment | 08/01/2015 | 1,413.94 | 112.96 | 442.41 | 151.60 | | 0.00 | 114,673.68 | 114,673.68 | 0.00 | -172.13 |
| | 0.00 | | Payment | 09/01/2015 | 706.97 | 113.40 | 441.97 | 151.60 | | 0.00 | 114,560.28 | 114,560.28 | 0.00 | -20.53 |
| | 0.00 | | Payment | 10/01/2015 | 0.00 | 113.84 | 441.53 | 151.60 | | 0.00 | 114,446.44 | 114,446.44 | 0.00 | 131.07 |
| | 06.97 | | Monthly payment | 11/01/2015 | 706.97 | | | | | | 114,446.44 | 114,446.44 | 0.00 | 131.07 |
| | 706.97 | | Payment | 11/01/2015 | 0.00 | 114.27 | 441.10 | 151.60 | | 0.00 | 114,332.17 | 114,332.17 | 0.00 | 282.67 |
| | 06.97 | | Monthly payment | 12/01/2015 | 706.97 | | | | | | 114,332.17 | 114,332.17 | 0.00 | 282.67 |
| | 07.36 | | Monthly payment | 12/01/2015 | 1,414.33 | | | | | | 114,332.17 | 114,332.17 | 0.00 | 282.67 |
| | 1,414.33 | | Payment | 12/01/2015 | 707.36 | 114.71 | 440.66 | 151.60 | | 707.36 | 114,217.46 | 114,217.46 | 0.00 | 434.27 |
| | 0.00 | | Payment | 01/01/2016 | 0.00 | 115.16 | 440.21 | 151.99 | | -707.36 | 114,102.30 | 114,102.30 | 0.00 | 586.26 |
| | 07.36 | | Monthly payment | 02/01/2016 | 707.36 | | | | | | 114,102.30 | 114,102.30 | 0.00 | 586.26 |

## Proof of Claim Attachment: Additional Page

18-20745-JAD

Cortea H. Ware

**Payment History from First Date of Default**

| | C. Funds received | D. Amount incurred | E. Description | F. Contractual Prin, int & due date | G. Contractual Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees Charges balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 707.36 | | Payment | 02/01/2016 | 0.00 | 115.60 | 439.77 | 151.99 | | 0.00 | 113,986.70 | | 0.00 | 738.25 |
| | | 707.36 | Monthly payment | 03/01/2016 | 707.36 | | | | | | 113,986.70 | | 0.00 | 738.25 |
| | | 147.44 | County tax disbursement | 03/01/2016 | 707.36 | 0.00 | 0.00 | -147.44 | | | 113,986.70 | | 0.00 | 590.81 |
| | 707.36 | | Payment | 03/01/2016 | 0.00 | 116.05 | 439.32 | 151.99 | | 0.00 | 113,870.65 | | 0.00 | 742.80 |
| | | 707.36 | Monthly payment | 04/01/2016 | 707.36 | | | | | | 113,870.65 | | 0.00 | 742.80 |
| | 707.36 | | Payment | 04/01/2016 | 0.00 | 116.49 | 438.88 | 151.99 | | 0.00 | 113,754.16 | | 0.00 | 894.79 |
| | | 707.36 | Monthly payment | 05/01/2016 | 707.36 | | | | | | 113,754.16 | | 0.00 | 894.79 |
| | | 47.37 | City tax disbursement | 05/01/2016 | 707.36 | 0.00 | 0.00 | -47.37 | | | 113,754.16 | | 0.00 | 847.42 |
| | 722.36 | | Payment | 05/01/2016 | 0.00 | 116.94 | 438.43 | 151.99 | | -15.00 | 113,637.22 | | 0.00 | 999.41 |
| | | 15.00 | Phone pay fee (Other) | 06/01/2016 | 0.00 | 0.00 | | | 15.00 | | 113,637.22 | | 0.00 | 999.41 |
| | | 707.36 | Monthly payment | 06/01/2016 | 707.36 | | | | | | 113,637.22 | | 0.00 | 999.41 |
| | | 1,414.72 | Monthly payment | 06/01/2016 | 1,414.72 | | | | | | | | | |
| | | 1,070.08 | Hazard Insurance Disbursement | 06/01/2016 | 1,414.72 | 0.00 | 0.00 | -1,070.08 | | | 113,637.22 | | 0.00 | -70.67 |
| | | 2,122.08 | Monthly payment | 06/01/2016 | 2,122.08 | | | | | | 113,637.22 | | 0.00 | -70.67 |
| | | 2,829.44 | Monthly payment | 06/01/2016 | 2,829.44 | | | | | | 113,637.22 | | 0.00 | -70.67 |
| | | 518.17 | Other/Sewer/Water/Maintenance Tax | 06/01/2016 | 2,829.44 | 0.00 | 0.00 | -518.17 | | | | | 0.00 | -588.84 |
| | | 3,536.80 | Monthly payment | 06/01/2016 | 3,536.80 | | | | | | 113,637.22 | | 0.00 | -588.84 |
| | | 705.00 | Attorney's fees | 06/01/2016 | 3,536.80 | | | | 705.00 | | 113,637.22 | | 0.00 | -588.84 |
| | | 120.00 | Filing fees and court costs | 06/01/2016 | 3,536.80 | | | | 120.00 | | 113,637.22 | | 0.00 | -588.84 |
| | 4,294.16 | 4,244.16 | Monthly payment | 06/01/2016 | 4,244.16 | 0.00 | 0.00 | 0.00 | | 4,294.16 | 113,637.22 | | 0.00 | -588.84 |
| | 0.00 | 0.00 | Payment | 06/01/2016 | 3,536.80 | 117.39 | 437.98 | 151.99 | | -4,244.16 | 113,519.83 | | 0.00 | -436.85 |

**Mortgage Proof of Claim Attachment**

# Proof of Claim Attachment: Additional Page

18-20745-JAD

Corlea H. Ware

**Payment History from First Date of Default**

| Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees Charges balance |
| 0.00 | 0.00 | Payment | 07/01/2016 | 2,829.44 | 117.85 | 437.52 | | 151.99 | 0.00 | 113,401.98 | 0.00 | 0.00 | -284.86 |
| 0.00 | 0.00 | Payment | 08/01/2016 | 2,122.08 | 118.30 | 437.07 | | 151.99 | 0.00 | 113,283.68 | 0.00 | 0.00 | -132.87 |
| 0.00 | 0.00 | Payment | 09/01/2016 | 1,414.72 | 118.76 | 436.61 | | 151.99 | 0.00 | 113,164.92 | 0.00 | 0.00 | 19.12 |
| 0.00 | 0.00 | Payment | 10/01/2016 | 707.36 | 119.21 | 436.16 | | 151.99 | 0.00 | 113,045.71 | 0.00 | 0.00 | 171.11 |
| 0.00 | 0.00 | Payment | 11/01/2016 | 0.00 | 119.67 | 435.70 | | 151.99 | 0.00 | 112,926.04 | 0.00 | 0.00 | 323.10 |
| 0.00 | 0.00 | Payment | 12/01/2016 | 0.00 | 0.00 | 0.00 | | 0.00 | | 112,926.04 | 0.00 | 0.00 | 323.10 |
| | -50.00 | Attorney's fees | 12/01/2016 | | | | | -50.00 | -50.00 | | | | |
| | 470.00 | Attorney's fees | 12/01/2016 | | | | | 470.00 | 470.00 | | | | |
| 707.36 | | Monthly payment | 12/01/2016 | 707.36 | | | | | | 112,926.04 | | 0.00 | |
| 0.00 | 0.00 | Non-Cash Balance Adj | 12/01/2016 | | 0.00 | 0.00 | | 0.00 | | 112,926.04 | 0.00 | 0.00 | 323.10 |
| 0.00 | 1,420.00 | Non-Cash Balance Adj | 01/01/2017 | | -1,855.24 | 0.00 | | 0.00 | | 114,781.28 | 0.00 | 0.00 | 323.10 |
| 1,420.00 | | Payment | 01/01/2017 | 0.00 | 0.00 | 0.00 | | 0.00 | 1,420.00 | 114,781.28 | 0.00 | 0.00 | 323.10 |
| -999.99 | -999.99 | FCL REINSTATMENT | 01/01/2017 | 0.00 | 0.00 | 0.00 | | 0.00 | -999.99 | 114,781.28 | 0.00 | 0.00 | 323.10 |
| 0.00 | 0.00 | Payment | 01/01/2017 | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 114,781.28 | 0.00 | 0.00 | 323.10 |
| -420.01 | -420.01 | FCL REINSTATMENT | 01/01/2017 | 0.00 | 0.00 | 0.00 | | 0.00 | -420.01 | 114,781.28 | 0.00 | 0.00 | 323.10 |
| 0.00 | 0.00 | Payment | 01/01/2017 | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 114,781.28 | 0.00 | 0.00 | 498.10 |
| 0.00 | 0.00 | Payment | 01/01/2017 | 0.00 | 0.00 | 0.00 | | 175.00 | -175.00 | 114,781.28 | 0.00 | 0.00 | 498.10 |
| 673.86 | | Monthly payment | 01/01/2017 | 673.86 | | | | | | 114,781.28 | | 0.00 | 498.10 |
| | 26.26 | Late Charge | 01/01/2017 | 673.86 | | | | 26.26 | 26.26 | 114,781.28 | | 0.00 | 498.10 |
| 175.00 | | Payment | 01/01/2017 | 673.86 | 0.00 | 0.00 | 0.00 | 0.00 | 175.00 | 114,781.28 | 0.00 | 0.00 | 498.10 |
| 175.00 | 175.00 | CORP ADV REPYMNT | 01/01/2017 | 673.86 | 0.00 | 0.00 | 0.00 | 175.00 | 0.00 | 114,781.28 | 0.00 | 0.00 | 498.10 |
| 673.86 | | Monthly payment | 01/01/2017 | 1,347.72 | | | | | | 114,781.28 | | 0.00 | 498.10 |

**Mortgage Proof of Claim Attachment**

# Proof of Claim Attachment: Additional Page

18-20745-JAD
Cortea H. Ware

## Payment History from First Date of Default

| C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees/Charges balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 26.26 | Late Charge | 01/01/2017 | 1,347.72 | | | | | 26.26 | | | 0.00 | 498.10 |
| 73.86 | | Monthly payment | 01/01/2017 | 2,021.58 | | | | | | 114,781.28 | | 0.00 | 498.10 |
| | 254.81 | County tax disbursement | 01/01/2017 | 2,021.58 | | 0.00 | -254.81 | | 0.00 | | | 0.00 | 243.29 |
| 73.86 | 26.26 | Late Charge | 01/01/2017 | 2,021.58 | | | | | 26.26 | | | 0.00 | 243.29 |
| | | Monthly payment | 01/01/2017 | 2,695.44 | | | | | | 114,781.28 | | 0.00 | 243.29 |
| 73.86 | 26.26 | Late Charge | 01/01/2017 | 2,695.44 | | | | | 26.26 | | | 0.00 | 243.29 |
| | | Monthly payment | 01/01/2017 | 3,369.30 | | | | | | 114,781.28 | | 0.00 | 243.29 |
| | 60.82 | City tax disbursement | 01/01/2017 | 3,369.30 | | 0.00 | -60.82 | | 0.00 | | | 0.00 | 182.47 |
| 73.86 | | Monthly payment | 01/01/2017 | 4,043.16 | | | | | | 114,781.28 | | 0.00 | 182.47 |
| | 840.00 | Attorney's fees | 01/01/2017 | 4,043.16 | | | | 840.00 | | | | 0.00 | 182.47 |
| 73.86 | | Monthly payment | 01/01/2017 | 4,717.02 | | | | | | 114,781.28 | | 0.00 | 182.47 |
| | 1,070.08 | Hazard Insurance Disbursement | 01/01/2017 | 4,717.02 | | 0.00 | -1,070.08 | | 0.00 | | | 0.00 | -887.61 |
| | 120.00 | Filing fees and court costs | 01/01/2017 | 4,717.02 | | | | 120.00 | | | | 0.00 | -887.61 |
| 73.86 | | Monthly payment | 01/01/2017 | 4,717.02 | | | | | | 114,781.28 | | 0.00 | -887.61 |
| | 560.00 | Attorney's fees | 01/01/2017 | 5,390.88 | | | | 560.00 | | | | 0.00 | -887.61 |
| 73.86 | 560.00 | Attorney's fees | 01/01/2017 | 5,390.88 | | | | 560.00 | | | | 0.00 | -887.61 |
| | | Monthly payment | 01/01/2017 | 6,064.74 | | | | | | 114,781.28 | | 0.00 | -887.61 |
| 73.86 | 866.03 | Other/Sewer/Water/Maintenance Tax | 01/01/2017 | 6,064.74 | | 0.00 | -866.03 | | 0.00 | | | 0.00 | -1,753.64 |
| | | Monthly payment | 01/01/2017 | 6,738.60 | | | | | | 114,781.28 | | 0.00 | -1,753.64 |
| 73.86 | | Monthly payment | 01/01/2017 | 7,412.46 | | | | | | 114,781.28 | | 0.00 | -1,753.64 |
| 73.86 | | Monthly payment | 01/01/2017 | 8,086.32 | | | | | | 114,781.28 | | 0.00 | -1,753.64 |

**Mortgage Proof of Claim Attachment**

Case 18-20745-JAD  Claim 3  Filed 03/27/18   Page 18 of 21

## Proof of Claim Attachment: Additional Page

18-20745-JAD

Coltea H. Ware

### Payment History from First Date of Default

| | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | |
| | **C.** Funds received | **D.** Amount incurred | **E.** Description | **F.** Contractual Prin, int due date | **G.** Prin, int & esc past due balance | **H.** Amount to principal | **I.** Amount to interest | **J.** Amount to escrow | **K.** Amount to fees or charges | **L.** Unapplied funds | **M.** Principal balance | **N.** Accrued interest balance | **O.** Escrow balance | **P.** Fees/ Charges balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 23.00 | Filing fees and court costs | 01/01/2017 | 8,086.32 | | | | | 23.00 | | 114,781.28 | 0.00 | -1,753.64 |
| | | 14.00 | Filing fees and court costs | 01/01/2017 | 8,086.32 | | | | | 14.00 | | 114,781.28 | 0.00 | -1,753.64 |
| | 12.91 | | Monthly payment | 01/01/2017 | 8,799.23 | | | | | | | 114,781.28 | 0.00 | -1,753.64 |
| | | 560.00 | Attorney's fees | 01/01/2017 | 8,799.23 | | | | | 560.00 | | 114,781.28 | 0.00 | -1,753.64 |
| | 12.91 | | Monthly payment | 01/01/2017 | 9,512.14 | | | | | | | 114,781.28 | 0.00 | -1,753.64 |
| | | | Bankruptcy Filed | 01/01/2017 | 9,512.14 | | | | | | | 114,781.28 | 0.00 | -1,753.64 |

**Mortgage Proof of Claim Attachment**

**Additional Disclaimers (where applicable)**

### 410

> **Part 2:** Question 9-Describe contains the property address and may contain a description for "Other".

### 410A

> **Part 1:**
>
> Full creditor name cannot be displayed due to space limitation, see 410 part 1.1 for full name.
>
> **Part 2:**
>
> Principal Balance is from Part 5, Column M as of the Bankruptcy File Date.
>
> Interest Due is the interest due as of the Bankruptcy File Date.
>
> Fees, costs due is from Part 5, Column P as of the Bankruptcy File Date and includes any outstanding fees (i.e. late charges, property inspections) and cost (i.e. attorney costs), also included are corporate advances (i.e. tax, insurance) for non-escrowed loans as of the Bankruptcy File Date. Any fees, costs due that are incurred pre-petition and waived post-petition will not be included.
>
> Escrow deficiency for funds advanced is from Part 5, Column O (if negative balance) as of the Bankruptcy File Date.
>
> Other includes any applicable Private Mortgage Insurance, other Optional Products (i.e. A & H, Life) or Deferred Interest, where applicable, due as of the Bankruptcy File Date. This line was added to ensure transparency.
>
> Less Total Funds on hand is the total of Part 5, Column O (if positive balance) and Q as of the Bankruptcy File Date.
>
> Total Debt not to be used for payoff purposes.
>
> **Part 3:**
>
> Principal and Interest is the principal and interest portion of Part 5, Column G, as of the Bankruptcy File Date. (If post-petition payments are included as required by Local Rule or practice, this field will include post-petition principal and interest amounts).
>
> Pre-Petition Fees Due is from Part 5, Column P as of the Bankruptcy File Date. Any fees, costs due that are incurred pre-petition and waived post-petition will not be included.
>
> Escrow Deficiency for Funds Advanced is from Part 5, Column O (if negative balance) as of the Bankruptcy File Date.
>
> Projected Escrow Shortage is the Escrow Required from the escrow analysis minus a positive escrow balance as of the Bankruptcy File Date. (If post-petition payments are included as required by Local Rule or practice, this field will include post-petition escrow amounts).
>
> Other includes any applicable Optional Products (i.e. A & H, Life) due as of the bankruptcy file date. This line was added to ensure transparency. (If post-petition payments are included as required by Local Rule or practice, this field will include post-petition Optional Product amounts).
>
> Less Funds on Hand is from Part 5, column Q as of the Bankruptcy File Date.
>
> **Part 4:**
>
> Optional Products includes any applicable optional products (i.e. A & H, Life) due as of the Bankruptcy File Date. This line was added to ensure transparency.
>
> (*)This disclaimer has been added to the form to explain that the monthly payment amount may change periodically throughout the life of the loan.
>
> **Part 5:**
>
> If any of the transactions in the loan payment history contain amounts for optional products, the amount for that product will be reflected in either the Contractual payment amount or the Funds Received amount, and will be applied in those amounts. It will also be reflected in column G as described below.
>
> Column G In addition to the items listed, this also includes any past due PMI or optional products (i.e. A & H, Life) amounts, as applicable. Optional product (i.e. A & H, Life) amounts will not be included in columns H-Q due to no appropriate column heading for this type of transaction.
>
> Column J includes taxes, insurance and MIP/PMI as applicable.
>
> Column N will only be populated if the loan is Daily Simple Interest or if Deferred Interest exists on the account.

Phelan Hallinan Diamond & Jones, LLP
1617 JFK Boulevard, Suite 1400, One Penn Center Plaza
Philadelphia, PA 19103

UNITED STATES BANKRUPTCY COURT
Western District of Pennsylvania (Pittsburgh)
Bankruptcy Petition # :18-20745-JAD

In Re:
    CORLEA H. WARE **(Debtor)**

Thomas Song, Esq., Id. No.89834 Certifies that a true and correct copy of the attached Proof
of Claim was served via first class mail upon the following person(s):

Scott R. Lowden
Nicotero & Lowden PC
3948 Monroeville Blvd., Suite 2
Monroeville, PA 15146
niclowlgl@comcast.net
**(Attorney for Debtor)**

RONDA J. WINNECOUR
SUITE 3250, USX TOWER, 600 GRANT STREET
PITTSBURGH, PA 15219
cmecf@chapter13trusteewdpa.com
**(Chapter 13 Trustee)**

OFFICE OF THE UNITED STATES TRUSTEE
LIBERTY CENTER., 1001 LIBERTY AVENUE, SUITE 970
PITTSBURGH, PA 15222
ustpregions03.pi.ecf@usdoj.gov
**(US Trustee)**

CORLEA H. WARE
4115 JEFFERSON AVENUE, WASHINGTON, PA 15301-9342
**(Debtor)**

Date    3/27/2018

/s/ Thomas Song, Esquire
Thomas Song, Esq., Id. No.89834
Phelan Hallinan Diamond & Jones, LLP
Omni William Penn Office Tower
555 Grant Street, Suite 300
Pittsburgh, PA 15219
Phone Number: 215-563-7000 Ext 31387
Fax Number: 215-568-7616
Email: Thomas.Song@phelanhallinan.com

8/10

MIN: █████████████████    **NOTE**    Loan Number: ████████████

JULY 30, 2010                 MARLTON              NEW JERSEY
  [Date]                       [City]                      [State]

4115 JEFFERSON AVE, HOPEWELL TWP, PENNSYLVANIA 15301
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 117,600.00    (this amount is called "Principal"), plus interest, to the order of the Lender.  The Lender is ACRE MORTGAGE & FINANCIAL, INC, A NEW JERSEY CORPORATION                          .
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid.  I will pay interest at a yearly rate of     5.375 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3.  PAYMENTS

### (A)  Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st  day of each month beginning on   SEPTEMBER 1    . 2010   .  I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal.  If, on   AUGUST 1, 2040    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 70 E. MAIN STREET, SUITE 100, MARLTON, NEW JERSEY 08053
                                   or at a different place if required by the Note Holder.

### (B)  Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 658.53

## 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is known as a "Prepayment."  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge.  The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note.  However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note.  If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits,

---

MULTISTATE FIXED RATE NOTE - Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200  1/01                          Page 1 of 3

DocMagic *eFormys* 800-649-1362
www.docmagic.com

then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A)  Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of        15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B)  Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C)  Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D)  No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E)  Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by  delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of  the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions.  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"),



dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

> If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
CORLEA H WARE          -Borrower                              -Borrower

_____ (Seal)          _____ (Seal)
-Borrower                              -Borrower

_____ (Seal)          _____ (Seal)
-Borrower                              -Borrower

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A.
By _____
Scott M. Swanson
Assistant Vice President

*[Sign Original Only]*

PAY TO THE ORDER OF **Wells Fargo Bank, N.A.**
WITHOUT RECOURSE.
ACRE MORTGAGE & FINANCIAL, INC
1ST CONSTITUTION BANK
ATTORNEY IN FACT
BY: _____

**ANNE DEUCHAR, VP**

MULTISTATE FIXED RATE NOTE - Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200  1/01                    Page 3 of 3

DocMagic *€Ŧorms* 800-649-1362
www.docmagic.com

# ALLONGE TO NOTE

**LOAN NUMBER:** ████████

**LOAN AMOUNT:** $117,600.00

**ALLONGE TO ONE CERTAIN NOTE DATED:** (Note Date) July 30, 2010

**AND EXECUTED BY:**  Corlea H Ware

**PROPERTY ADDRESS:** 4115 Jefferson Ave
                                Hopewell Twp, Pennsylvania 15301

**PAY TO THE ORDER OF:**  WELLS FARGO BANK, N.A.

**WITHOUT RECOURSE:** ACRE MORTGAGE & FINANCIAL, INC,
(Company Name)          A NEW JERSEY CORPORATION

**BY:** _____
          William Gallagan
**TITLE:** _Director, Secondary Marketing

R&R

BROKERS ABSTRACT & SEARCH CO. INC.
245 JACKSONVILLE ROAD
IVYLAND, PA 18974

DEBORAH BARDELLA
RECORDER OF DEEDS
WASHINGTON, PA
Pennsylvania
INSTRUMENT NUMBER
201024936
RECORDED ON
Aug 09, 2010
10:44:47 AM
Total Pages: 19
RECORDING FEES
TOTAL PAID
$93.50
$93.50
INV#: 448069 USER: PM

This Instrument Prepared By:

After Recording Return To:
ACRE MORTGAGE & FINANCIAL, INC
70 E. MAIN STREET, SUITE 100
MARLTON, NEW JERSEY 08053
Loan Number: ▮▮▮▮▮
Uniform Parcel Identifier Number:
350-011-00-00-0024-00
Property Address:
4115 JEFFERSON AVE
HOPEWELL TWP, PENNSYLVANIA
15301

——————————— [Space Above This Line For Recording Data] ———————————

# MORTGAGE

MIN: ▮▮▮▮▮▮▮▮▮▮

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  "Security Instrument" means this document, which is dated   JULY 30, 2010                    , together
with all Riders to this document.
(B)  "Borrower" is   CORLEA H WARE SINGLE WOMAN

Borrower is the mortgagor under this Security Instrument.
(C)  "MERS" is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns.  MERS is the mortgagee under this Security
Instrument.  MERS is organized and existing under the laws of Delaware,  and has a mailing address of P.O. Box

⑤

PENNSYLVANIA--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3039 01/01
Page 1 of 17

DocMagic eForms 800-649-1362
www.docmagic.com

2026, Flint, MI 48501-2026 and a street address of 3300 S.W. 34th Avenue, Suite 101, Ocala, FL 34474. MERS telephone number is (888) 679-MERS.

(D) "Lender" is ACRE MORTGAGE & FINANCIAL, INC

Lender is a NEW JERSEY CORPORATION                                                                                  organized
and existing under the laws of NEW JERSEY
Lender's address is 70 E. MAIN STREET, SUITE 100, MARLTON, NEW JERSEY
08053

(E) "Note" means the promissory note signed by Borrower and dated JULY 30, 2010
The Note states that Borrower owes Lender ONE HUNDRED SEVENTEEN THOUSAND SIX
HUNDRED AND 00/100                        Dollars (U.S. $ 117,600.00      ) plus interest.
Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
AUGUST 1, 2040
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under
the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are
to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider        ☐ Planned Unit Development Rider
☐ Balloon Rider                ☐ Biweekly Payment Rider
☐ 1-4 Family Rider             ☐ Second Home Rider
☐ Condominium Rider            ☐ Other(s) [specify]

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and
administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial
opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges
that are imposed on Borrower or the Property by a condominium association, homeowners association or similar
organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft,
or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or
magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term
includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by
telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.

PENNSYLVANIA--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3039 01/01                                          Page 2 of 17

DocMagic *e*fforms 800-649-1362
www.docmagic.com

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the

COUNTY                                  of                    WASHINGTON
[Type of Recording Jurisdiction]                                    [Name of Recording Jurisdiction]
SEE ATTACHED LEGAL DESCRIPTION
A.P.N.: 350-011-00-00-0024-00


which currently has the address of              4115   JEFFERSON AVE
                                                      [Street]

HOPEWELL TWP                    , Pennsylvania        15301        ("Property Address"):
        [City]                                       [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security

PENNSYLVANIA--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3039 01/01                                    Page 3 of 17

DocMagic *eFormns* 800-649-1362
www.docmagic.com

Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.  **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.  **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the

repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.  **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA,

---

PENNSYLVANIA--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3039 01/01                                Page 5 of 17

DocMagic *eForms* 800-649-1362
www.docmagic.com

Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  **Charges; Liens.**  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any.  To the extent that these Items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.  If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien.  Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.  **Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance.  This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires.  What Lender requires pursuant to the preceding sentences can change during the term of the Loan.  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably.  Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification.  Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount of coverage.  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in

PENNSYLVANIA--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3039 01/01                                    Page 7 of 17                    DocMagic *eForms* 800-649-1362
                                                                                  www.docmagic.com

a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these

payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security

Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security

DocMagic *eFormus* 800-649-1362
www.docmagic.com

instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security

Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other

information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.

23. **Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

25. **Reinstatement Period.** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

26. **Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

27. **Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)          _____ (Seal)
CORLEA H WARE                 -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                             -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                             -Borrower                                    -Borrower

Witness:                                   Witness:

_____                  _____
PATRICIA J LARSON

PENNSYLVANIA--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3039 01/01                    Page 15 of 17          DocMagic *eForms* 800-649-1362
                                                          www.docmagic.com

---------------------------- [Space Below This Line For Acknowledgment] ----------------------------

State of ___PENNSYLVANIA___

County of ___WASHINGTON___

On this the _30th_ day of _JULY 2010_ , before me, _____
_PATRICIA J. LARSON_ .

the undersigned officer, personally appeared ___CORLEA H WARE___

_____

_____

known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seals.

_Patricia J Larson_
Signature

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Patricia J. Larson, Notary Public
Luzerne Twp., Fayette County
My Commission Expires Oct. 2, 2011
Member, Pennsylvania Association of Notaries

(Seal)

_PATRICIA J. LARSON_
Printed Name

_NOTARY PUBLIC_
Title of Officer

My commission expires: _10/2/2011_

PENNSYLVANIA--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3039 01/01                              Page 16 of 17

DocMagic €Forms 800-649-1362
www.docmagic.com

Certificate of Residence of Mortgagee

The undersigned hereby certifies that: (i) he/she is the Mortgagee or the duly authorized attorney or agent of the Mortgagee named in the within instrument; and (ii) Mortgagee's precise residence is:
3300 S. W. 34th Avenue, Suite 101, Ocala, FL 24474, P. O. Box 2026, Flint, Michigan 48501-2026

Witness my hand this ___30___ day of ___July 2010_____.

_____
Signature of Mortgagee or Mortgagee's Duly Authorized Attorney or Agent

_____
Type or Print Name of Mortgagee or Mortgagee's Duly Authorized Attorney or Agent

ALL THAT CERTAIN lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in **HOPEWELL TOWNSHIP**, County of **WASHINGTON**, Commonwealth of **PENNSYLVANIA**, bounded and described as follows:

PARCEL ONE:

BEGINNING at a corner common to land herein conveyed, land now or formerly of William McDaid and Albert Clayton; thence by land now or formerly of Albert Clayton, North 15 degrees 9 minutes East 523.18 feet to an iron pipe; thence by land formerly conveyed to Mabel C. McVay, South 76 degrees 46 minutes East 197.74 feet to an iron pipe; thence by same North 10 degrees 15 minutes East 660.08 feet to a stake; thence by same North 76 degrees East 266.21 feet to an iron pin; thence by land now or formerly of Martin E. Yoders South 25 degrees 11 minutes East 185.50 feet to a stake; thence by the same South 2 degrees 55 minutes West 90.30 feet to a stake; thence by same South 16 degrees 20 minutes East 127.80 feet to a point; thence by land now or formerly of Walter McCreery North 56 degrees 31 minutes West 9/18 feet to a point; thence by same South 22 degrees 22 minutes West 935.96 feet to a point; thence by land now or formerly of William McDaid North 62 degrees 55 minutes West 550.88 feet to a point, the place of beginning.

CONTAINING 14.7117 acres, more or less, according to survey made by William G. Wylie, C.E. on December 8, 1941.

PARCEL TWO:

BEGINNING at a point, being the extreme Northeast corner of the tract herein conveyed, which is common to other land now or formerly of Mabel C. Cowden, formerly Mabel C. McVay, and the larger tract hereinabove conveyed, said place of beginning being located South 76 degrees West a distance of 234 feet from a point in the center of the road running between West Middletown and Washington, which said point of reference is a corner common to property formerly of James R. and LaVerne S. McVay and Mebel C. McVay and property now or formerly of Martin S. Yoders; thence from the said place of beginning, along the larger tract of land hereinabove conveyed, South 19 degrees 15 minutes West a distance of 660.08 feet to an iron pipe; thence continuing by said tract North 76 degrees 46 minutes West a distance of 197.74 feet to an iron pipe; thence along property now or formerly of Albert Clayton, North 15 degrees 9 minutes East a distance of 97 feet to an iron pipe; thence continuing by same North 2 degrees 7 minutes West a distance of 412.31 feet to a point; thence continuing by the same North 5 degrees 7 minutes West a distance of 14,54 feet to a stake; thence along the property formerly of Mabel C. McVay, South 82 degrees 45 minutes East a distance of 61.10 feet to a stake; thence continuing by said property formerly of McVay, North 80 degrees 45 minutes East a distance of 227.50 feet to a stake; thence continuing by the same, North 76 degrees 0 minutes East a distance of 119.69 feet to a stake, the place of beginning.

CONTAINING 3.632 acres, more or less, as per survey of Wm. G. Wylie, C.E. dated December 9, 1941.

PARCEL THREE:

BEGINNING at an iron pin at a corner common to lands now or formerly of Alex A. Bentz and the tract hereby conveyed, said pin being South 46 degrees 41 minutes West 45.17 feet in distance from an iron pin within the tract hereby conveyed; thence by land now or formerly of Alex A. Bentz, South 46 degrees 41 minutes West, a distance of 337.87 feet to an iron pin on the Southerly right of way line of State Road 844; thence a distance of 21.44 feet to the center line of State Route 844; thence following a curve to the right along the center line of said highway, with a radius of 603.81 feet an arc length of 277.16 feet to an iron pin in the center line of said highway; thence by land now or formerly of Lindsay Waychoff, North 76 degrees East, a distance of 354.29 feet to a point; thence by same North 80 degrees 45 minutes East a distance of 227.50 feet to a point; thence by same South 82 degrees 45 minutes East, a distance of 61.10 feet to a point on line of land now or formerly of Leroy Morgan;

PA-3

thence by land now or formerly of Leroy Morgan, North 5 degrees 7 minutes West, 109.1 feet to an iron pin; thence by land now or formerly of Alex A. Bentz, 78 degrees 52 minutes 35 seconds West, a distance of 197.20 feet to the place of beginning.

CONTAINING 1.83 acres, more or less, according to survey made by Ward Dran in June, 1984.

BEING THE SAME PREMISES which EARL L. WARE, Unmarried by Indenture bearing the date of November 11, 2004 and recorded in the Office of the Recorder of Deeds, in and for the County of Washington, COMMONWEALTH OF PENNSYLVANIA on February 22, 2005 as Instrument #200504883 granted and conveyed unto CORLEA H. WARE, Unmarried, her Heirs and Assigns, in fee.

Parcel No. 350-011-00-00-0024-00

PA-3

When Recorded Return To:
DEFAULT ASSIGNMENT
WELLS FARGO BANK, N.A.
MAC: X9999-018
PO BOX 1629
MINNEAPOLIS, MN 55440-9790

**Assessor's/Tax ID No. 350-011-00-00-0024-00**

## CORPORATE ASSIGNMENT OF MORTGAGE

**Washington, Pennsylvania**
"WARE"
**SELLER'S LENDER ID#**
**INVESTOR'S LOAN #:**
**POOL #:**
**OLD SERVICING #**

**MERS #**      **SIS #: 1-888-679-6377**

Date of Assignment: November 14th, 2011

Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR ACRE
MORTGAGE & FINANCIAL, INC, ITS SUCCESSORS AND ASSIGNS
Assignee: WELLS FARGO BANK, NA

I hereby certify the precise address of the within named Assignor is BOX 2026 FLINT MI 48501, 1901 E
VOORHEES ST STE C., DANVILLE, IL 61834.

I hereby certify the precise address of the within named Assignee is 1 HOME CAMPUS, DES MOINES,
IA 50328.
Executed By: CORLEA H WARE SINGLE WOMAN  To: MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., AS NOMINEE FOR ACRE MORTGAGE & FINANCIAL, INC, ITS SUCCESSORS AND
ASSIGNS
Date of Mortgage: 07/30/2010 Recorded:  08/09/2010  in Book/Reel/Liber: N/A Page/Folio: N/A as
Instrument/Document: 201024936  In the County of Washington, State of Pennsylvania.
4115 JEFFERSON AVE, HOPEWELL TWP, PA  15301 in the Township of HOPEWELL TWP
I do certify that the precise address of WELLS FARGO  BANK, NA is 1 HOME CAMPUS, DES MOINES,
IA 50328
Attested By:
4115 JEFFERSON AVE, HOPEWELL TWP, PA  15301  in the Township of HOPEWELL TWP

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and
sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named
Assignee, the said Mortgage having an original principal sum of $117,600.00 with interest, secured
thereby, with all moneys now owing or that may hereafter become due or owing in respect thereof, and
the full benefit of all the powers and of all the covenants and provisos therein contained, and the said
Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 pf 2

Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR ACRE MORTGAGE & FINANCIAL, INC, ITS SUCCESSORS AND ASSIGNS
On _11/15/11_

By: _____
KATHLEEN EVERSON, Assistant
Secretary

STATE OF Minnesota
COUNTY OF Dakota

On _11/17/11_, before me, DEBORAH L HUMPHREY, a Notary Public in Dakota County in the State of Minnesota, personally appeared KATHLEEN EVERSON, Assistant Secretary of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR ACRE MORTGAGE & FINANCIAL, INC, ITS SUCCESSORS AND ASSIGNS, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
DEBORAH L HUMPHREY
Notary Expires: 01/31/2015 #20089267

DEBORAH L HUMPHREY
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2015

(This area for notarial seal)

## LOAN MODIFICATION AGREEMENT
### Loan Number: ███████
~~G MIN~~ ██████████   ~~MERS Phone: 1-888-679-6377~~  𝒦𝐵
07/30/2010

This Loan Modification Agreement ("Agreement"), made as of **Wednesday, January 04, 2012**, between: **CORLEA H WARE** ("Borrower") and **Wells Fargo Bank, N.A.** ("Lender"), ~~and Mortgage Electronic Registration Systems, Inc. "Mortgagee"~~, 𝒦𝐵 amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated 07/30/2010 and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

4115 JEFFERSON AVE
HOPEWELL TWP, PA 15301

the real property described being set forth as follows:

𝒦𝐵

~~"**MERS**" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is~~ acting solely as a ~~nominee for lender and lender's successors and assigns.~~ MERS is the mortgagee under the Mortgage. ~~MERS is organized and existing under the laws~~ of Delaware, and has an ~~address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS.~~

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

### BORROWER'S REPRESENTATIONS:

1.  As of **02/01/2012**, the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. **$121,358.09** consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2.  Interest at the rate of **4.625** will begin to accrue on the New Principal Balance as of **02/01/2012** and the first new monthly payment on the New Principal Balance will be due on **03/01/2012**. The new Maturity Date will be **02/01/2052**. My payment schedule for the Modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment | Monthly Escrow Payment Amount | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-40 | 4.625 | 02/01/2012 | $555.37 | 142.13 adjusts annually after 1 year | 697.50 adjusts annually after 1 year | 03/01/2012 | 480 |

3.  If I make a partial prepayment of Principal, the Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

4.  By this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

5.  If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

6.  If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

7.  Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument.

'8.  Borrower understands and agrees that:

(a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise hereunder or by operation of law.  Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f)  If the security property is an investment property or 2-4 unit principal residence: Borrower hereby absolutely and unconditionally assigns and transfers to lender all leases of the Property and all security deposits made in connection with leases of the Property.  Upon the assignment, Lender shall have right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion.  As used in this paragraph, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold estate.

Borrower hereby absolutely and unconditionally assigns and transfers to Lender all the rents and revenues "Rents" of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents.  However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default under this agreement, pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent.  This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the rents, including, but

not limited to, attorney's fees, receiver's fees, premiums or receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9 of the Security Instruments.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when the default occurs. Any application or Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.


*Corlea H. Ware*  1-16-2012
CORLEA H WARE                              Date

_____
                                           Date

_____
                                           Date

_____
                                           Date     **Kelley Butikofer**
*Kelley Butikofer*  03/07/12          Vice President Loan Documentation
Wells Fargo Bank, N.A., Officer/Date

_____
~~Mortgage Electronic Registration Systems, Inc.~~  KB

```
CERTIFIED PROPERTY IDENTIFICATION NUMBERS
350-011-00-00-002400    HOPEWELL TP
LCGIS REGISTRY 01/03/2017 BY JU
```

Inst. # 201700032 - Page 1 of 13

```
DEBORAH BARDELLA
RECORDER OF DEEDS
WASHINGTON, PA
Pennsylvania

INSTRUMENT NUMBER
201700032
RECORDED ON
Jan 03, 2017
9:54:57 AM
Total Pages: 13

RECORDING FEES        $47.00
TOTAL PAID            $47.00
INV: 674086 USER: JF
```

This Document Prepared By:
**MOHAMMAD ASHRAFUL**
**WELLS FARGO BANK, N.A.**
**3476 STATEVIEW BLVD, MAC# X7801-03K**
**FORT MILL, SC 29715**
**(800) 416-1472**

When Recorded Mail To:
**FIRST AMERICAN TITLE CO.**
**DTO – MAIL STOP 3-2-8**
**3 FIRST AMERICAN WAY**
**SANTA ANA, CA 92707-9991**

Tax/Parcel #: 350-011-00-00-0024-00
_____ [Space Above This Line for Recording Data]_____
Original Principal Amount: $117,600.00            Investor Loan No.: ▮▮▮▮▮
Unpaid Principal Amount: $112,926.04              Loan No: ▮▮▮▮▮
New Principal Amount $114,781.28
Total Cap Amount: $1,855.24

# LOAN MODIFICATION AGREEMENT (MORTGAGE)

Executed on this day: **DECEMBER 2, 2016**
Borrower ("I"):[1] **CORLEA H WARE**
Borrower Mailing Address: **4115 JEFFERSON AVE, HOPEWELL TWP, PENNSYLVANIA 15301**
Lender or Servicer ("Lender"): **WELLS FARGO BANK, N.A.**
Lender or Servicer Address: **3476 STATEVIEW BLVD, MAC# X7801-03K, FORT MILL, SC 29715**
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") **JULY 30, 2010** and the Note ("Note")
date of **JULY 30, 2010**
Property Address ("Property"): **4115 JEFFERSON AVE, HOPEWELL TWP, PENNSYLVANIA 15301**

Legal Description:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

Prior instrument reference: Recorded on **AUGUST 9, 2010** in **INSTRUMENT NO. 201024936**, of the

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I" or "my")
shall include the plural (such as "we" or "our") and vice versa where appropriate

Wells Fargo Custom Non HAMP 11112016_368

Page 1

**Official Records of WASHINGTON COUNTY, PENNSYLVANIA**

This Loan Modification Agreement ("Agreement") is made on **DECEMBER 2, 2016** by and between Borrower, as obligor(s), or as title holder(s) to the Property, as the context may require, and Lender. Borrower's obligations under the Note are secured by a properly recorded Mortgage, dated the same date as the Note encumbering the Property. Borrower agrees that, except as expressly modified in this Agreement, the Note and the Mortgage remain in full force and effect and are valid, binding obligations upon Borrower, except as discharged in Bankruptcy, and are properly secured by the Property.

If my representations in Section 1, Borrower Representations, continue to be true in all material respects, then this Agreement will amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are hereafter referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in the Loan Documents.

In consideration of the covenants hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed as follows (notwithstanding anything to the contrary in the Loan Documents).

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement.

Nothing in this Agreement shall be understood or construed to be a satisfaction or release, in whole or in part of the Borrower's obligations under the Loan Documents. Further, except as otherwise specifically provided in this Agreement, the Loan Documents will remain unchanged, and Borrower and Lender will be bound by, and shall comply with, all of the terms and provisions thereof, as amended by this Agreement:

1. **Borrower Representations.**

   I certify, represent to Lender and agree:

   A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and/or (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future; I did not intentionally or purposefully default of the Mortgage Loan in order to obtain a loan modification;

   B. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the modification, are true and correct;

   C. If Lender requires me to obtain credit counseling in connection with the modification, I will do so;

   D. I have made or will make all payments required within this modification process;

   E. In consideration of the covenants hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, it is agreed as follows (notwithstanding anything to the contrary in the Loan Documents).

2. **The Modification.**

Wells Fargo Custom Non HAMP 11112016_368

A. The modified principal balance of the Note will include amounts and arrearages that will be past due as of the Modification Effective Date (which may include unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, valuation, property preservation, and other charges not permitted under the terms of this modification, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to the modified loan. The new principal balance of my Note will be **$114,781.28** (the "New Principal Balance"). Borrower understands that by agreeing to add the Unpaid Amounts to the principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. Borrower also understands that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

B. Interest at the rate of **4.6250%** will begin to accrue on the New Principal Balance as of **DECEMBER 1, 2016** and the first new monthly payment on the New Principal Balance will be due on **JANUARY 1, 2017** Interest due on each monthly payment will be calculated by multiplying the New Principal Balance and the interest rate in effect at the time of calculation and dividing the result by twelve (12). My payment schedule for the modified Loan is as follows:

| Months | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment | Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On |
|--------|---------------|---------------------------|----------------------------------------|--------------------------------|------------------------|-------------------|
| 480 | 4.6250% | 12/01/2016 | $525.27 | $160.85 | $686.12 | 01/01/2017 |

**\* This includes an escrow shortage amount to be paid over the first 60 month term. After your modification is complete, escrow payments adjust at least annually in accordance with applicable law; therefore, the total monthly payment may change accordingly.**

The above terms shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

3. **Loan Modification Terms.**

This Agreement hereby modifies the following terms of the Loan Documents as described herein above as follows:

A. The current contractual due date has been changed from **DECEMBER 1, 2016** to **JANUARY 1, 2017**. The first modified contractual due date is **JANUARY 1, 2017**.

B. The maturity date is **DECEMBER 1, 2056**.

C. The amount of Recoverable Expenses* to be capitalized will be U.S. **$1,420.00.**

   *Recoverable Expenses may include, but are not limited to: Title, Attorney fees/costs, BPO/Appraisal, and/or Property Preservation/Property Inspections.

D. Lender will forgive outstanding Other Fees U.S. **$0.00.** Other Fees may include, but are not limited to: Prior Deferred Interest, appraisal fees.

    E.   Lender will forgive outstanding NSF Fees U.S. **$0.00**.

    F.   Lender agrees to waive all unpaid Late Charges in the amount of U.S. **$0.00**.

    G.   The amount of interest to be included (capitalized) will be U.S. **$435.24**.

    H.   The amount of the Escrow Advance to be capitalized will be U.S. **$0.00**.

**4.  Additional Agreements.**

I agree to the following:

    A.   If applicable, the Note may contain provisions allowing for changes in the interest rate and the monthly payment. The Note limits the amount the Borrower's interest rate can change at any one time and the maximum rate the Borrowers must pay.

    B.   If a biweekly loan, the Loan will convert to a monthly payment schedule. References in the Loan Documents to "biweekly," "every two weeks," and "every other Monday" shall be read as "monthly," except as it relates to the Modified Maturity Date. Interest will be charged on a 360-day year, divided into twelve (12) segments. Interest charged at all other times will be computed by multiplying the interest bearing principal balance by the interest rate, dividing the result by 365, and then multiplying that daily interest amount by the actual number of days for which interest is then due. As part of the conversion from biweekly to monthly payments, any automatic withdrawal of payments (auto drafting) in effect with Lender for the Loan are cancelled.

    C.   **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.E. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and Agreement contained in the Loan Documents, as the phrase "covenant and Agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.E.



Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

D.  If the Borrowers balance has been reduced as a result of this new Agreement, it is understood that any credit life, accident and health, and involuntary unemployment insurance written in connection with this loan has been cancelled, and that any refund of unearned premiums or charges made because of the cancellation of such credit insurance is reflected in the amount due under this Agreement. *Exception:* In the state of California, Life, A&H, and IUI insurance <u>must</u> be cancelled, with refunds applied to the account prior to entry of the settlement transaction, even though there is no reduction in balance as part of the settlement.

E.  If this loan has "Monthly Add-On Premium" Credit Life or Credit Accident & Health Insurance coverage, it is understood and agreed that the Borrowers acceptance of this Agreement will result in the cancellation of the above-mentioned insurances.

F.  If the Borrower's home owners insurance should lapse, **Wells Fargo Home Mortgage** reserves the right to place Lender Placed Insurance (LPI) on the account. If LPI is placed on the account the monthly payment could increase. All other terms of the modification Agreement will not be affected by the LPI and will remain in effect with accordance to this Agreement.

G.  If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Loan Documents. If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Loan Documents. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any

Wells Fargo Custom Non HAMP 11112016_368

remedies permitted by the Loan Documents without further notice or demand on Borrower.

H.   If Borrower has a pay option adjustable rate mortgage Loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan.

I.   If Borrower fails to pay Lender the amount due and owing or to pay my monthly payment on the dates above, Borrower shall surrender the Property to Lender. If Borrower fails or refuses to surrender the Property to Lender, Lender may exercise any and all remedies to recover the Property as may be available to Lender pursuant to its security interest and lien and applicable law. These remedies may include the recovery of reasonable attorney's fees actually incurred, plus legal expenses and expenses for entering on the Property to make repairs in any foreclosure action filed to enforce the Lender lien. Lender's rights and remedies extend only to the Property, and any action related to the Property itself and not to recovery of any amount owed to Lender under the Note as modified herein, which has been discharged in bankruptcy.

J.   If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the 1-4 Family Modification Agreement Rider Assignment of Rents.

K.   If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the Notice of Special Flood Hazard disclosure.

L.   CORRECTION AGREEMENT: The undersigned Borrower(s), for and in consideration of the approval, closing and funding of this Modification, hereby grants **Wells Fargo Home Mortgage,** as lender, limited power of attorney to correct and/or initial all typographical or clerical errors discovered in the Modification Agreement required to be signed. In the event this limited power of attorney is exercised, the undersigned will be notified and receive a copy of the document executed or initialed on their behalf. This provision may not be used to modify the interest rate, modify the term, modify the outstanding principal balance or modify the undersigned's monthly principal and interest payments as modified by this Agreement. Any of these specified changes must be executed directly by the undersigned. This limited power of attorney shall automatically terminate in 120 days from the closing date of the undersigned's Modification. Borrower agrees to make and execute such other documents or papers as necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to their heirs, executors, administrators, and assigns of the Borrower.

M.   If the Borrower's Loan is currently in foreclosure, the Lender will attempt to suspend or cancel the foreclosure action upon receipt of the first payment according to this Agreement. Lender agrees to suspend further collection efforts as long as Borrowers continue making the required payments under this Agreement.

N.   All the rights and remedies, stipulations, and conditions contained in the Loan Documents relating to default in the making of payments under the Loan Documents shall also apply to default in the making of the modified payments hereunder.

O.   This Agreement shall supersede the terms of any modification, forbearance, trial period plan or other mortgage assistance that the Borrower previously entered into with Lender.

Wells Fargo Custom Non HAMP 11112016_368

P.   In cases where the Loan has been registered with Mortgagee who has only legal title to the interests granted by the Borrower in the Loan Documents, Mortgagee has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property and to take any action required of Lender including, but not limited to, releasing and canceling the Loan.

Q.   If the Loan Documents govern a home equity loan or line of credit, then Borrower agrees that as of the Modification Effective Date, the right to borrow new funds under the home equity loan or line of credit is terminated. This means that Borrower cannot obtain additional advances and must make payments according to this Agreement. Lender may have previously terminated or suspended the right to obtain additional advances under the home equity loan or line of credit, and if so, Borrower confirms and acknowledges that no additional advances may be obtained.

R.   Unless this Agreement is executed without alteration and is signed and returned along with the following documents with the payment, if required, within 15 days from the date of this letter in the enclosed, prepaid overnight envelope, it will be of no force or effect and the Loan will remain subject to all existing terms and, conditions provided in the Loan Documents. Upon receipt of a properly executed Agreement, this Agreement will become effective on **DECEMBER 1, 2016.**

S.   I agree that this Agreement will be null and void if the Lender is unable to receive all necessary title endorsement(s), title insurance product(s) and/ or subordination Agreement(s).

T.   Borrower must deliver to **Wells Fargo Home Mortgage** a properly signed modification Agreement by **DECEMBER 17, 2016.** If Borrower does not return a properly signed modification Agreement by this date and make all payments pursuant to the trial plan Agreement or any other required pre-modification payments, **Wells Fargo Home Mortgage** may deny or cancel the modification. If the Borrower returns properly signed modification Agreement by said date, payments pursuant to the loan modification Agreement are due as outlined in this modification Agreement. **Wells Fargo Home Mortgage** may deny or cancel this loan modification Agreement if Borrower fails to make the first payment due pursuant to this loan modification Agreement.

U.   Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about my modification or foreclosure relief programs, with Third Parties that can assist. Lender and Borrower in obtaining a. foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

V.   Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging. ☐

Wells Fargo Custom Non HAMP 11112016_368

All Borrowers are required to sign and date this Agreement in blue or black ink only as the borrowers' name appears below. If signed using any other color or method, the document will not be accepted and another copy of the Agreement will be sent to the Borrower to be signed.

By signing below, all Borrowers certify they have read this Agreement in its entirety, that all Borrowers know and understand the meaning and intent of this Agreement and that all Borrowers enter into this Agreement knowingly and voluntarily. By signing below, all Borrowers agree to all terms and conditions described on every page of this Agreement.

In Witness Whereof, I have executed this Agreement.

Borrower: CORLEA H WARE

_Decr 12, 2016_
Date

_____ [Space Below This Line for Acknowledgments] _____

**BORROWER ACKNOWLEDGMENT**

STATE OF _Pennsylvania_

COUNTY OF _Washington_

On this, the _12th_ day of _December_, _2016_, before me _Anthony Latella_, the undersigned officer, personally appeared **CORLEA H WARE**, known to me (or satisfactorily proven) to be the person whose name subscribed to the within instrument, and acknowledged that (he/she/they) executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal

Notary Public

Printed Name: _Anthony LATELLA_

My commission expires: _3.23.2020_



COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Anthony Latella, Notary Public
City of New Kensington, Westmoreland County
My Commission Expires March 23, 2020
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

Wells Fargo Custom Non HAMP 11112016_368

Page 9

In Witness Whereof, the Lender have executed this Agreement.

**WELLS FARGO BANK, N.A.**

Griscelda Ruiz Espinosa
Vice President Loan Documentation

By: (print name)
    (title)

(sign)                                      12/22/16
                                              Date

_____ [Space Below This Line for Acknowledgments] _____


**STATE OF MINNESOTA**

**COUNTY OF** _Dakota_

This instrument was acknowledged before me _12-22-2016_ _____ (date) by

_Griscelda Ruiz Espinosa_ _____ (name(s) of person(s)) as

Vice President Loan Documentation

(type of authority, e.g., officer, trustee, etc.) of WELLS

FARGO BANK, N.A. (name of party on behalf of whom the instrument was executed).


_Kea CBL_
Notary Public

Printed Name:      Kenya C Blackmon

My Commission Expires:
   _1-31-19_

KENYA C BLACKMON
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 01/31/19

**EXHIBIT A**

**BORROWER(S): CORLEA H WARE**

**LOAN NUMBER** ███████████

**LEGAL DESCRIPTION:**

**PARCEL ONE:** BEGINNING AT A CORNER COMMON TO LAND HEREIN CONVEYED, LAND
NOW OR FORMERLY OF WILLIAM MCDAID AND ALBERT CLAYTON; THENCE BY LAND
NOW OR FORMERLY OF ALBERT CLAYTON, NORTH 15 DEGREES 9' EAST 523.18 FEET TO AN
IRON PIPE; THENCE BY LAND FORMERLY CONVEYED TO MABEL C. MCVAY, SOUTH 76
DEGREES 46' EAST 197.74 FEET TO AN IRON PIPE; THENCE BY SAME NORTH 10 DEGREES
15' EAST 660.08 FEET TO A STAKE; THENCE BY SAME NORTH 76 DEGREES EAST 266.21 FEET
TO AN IRON PIN; THENCE BY LAND NOW OR FORMERLY OF MARTIN E. YODERS SOUTH 25
DEGREES 11' EAST 185.50 FEET TO A STAKE; THENCE BY THE SAME SOUTH 2 DEGREES 55'
WEST 90.30 FEET TO A STAKE; THENCE BY SAME SOUTH 16 DEGREES 20' EAST 127.80 FEET
TO A POINT; THENCE BY LAND NOW OR FORMERLY OF WALTER MCCREERY NORTH 56
DEGREES 31' WEST 9/18 FEET TO A POINT; THENCE BY SAME SOUTH 22 DEGREES 22' WEST
935.96 FEET TO A POINT; THENCE BY LAND NOW OR FORMERLY OF WILLIAM MCDAID
NORTH 62 DEGREES 55' WEST 550.88 FEET TO A POINT, THE PLACE OF BEGINNING.

  CONTAINING 14.7117 ACRES ACCORDING TO SURVEY MADE BY WILLIAM G. WYLIE, C.E.
ON DECEMBER 8, 1941.

  **PARCEL TWO:** BEGINNING AT A POINT, BEING THE EXTREME NORTHEAST CORNER OF
THE TRACT HEREIN CONVEYED, WHICH IS COMMON TO OTHER LAND NOW OR
FORMERLY OF MABEL C. COWDEN, FORMERLY MABEL C. MCVAY, AND THE LARGER
TRACT HEREINABOVE CONVEYED, SAID PLACE OF BEGINNING BEING LOCATED SOUTH
76 DEGREES WEST A DISTANCE OF 234 FEET FROM A POINT IN THE CENTER OF THE ROAD
RUNNING BETWEEN WEST MIDDLETOWN AND WASHINGTON, WHICH SAID POINT OF
REFERENCE IS A CORNER COMMON TO PROPERTY FORMERLY OF JAMES R. AND
LAVERNE S. MCVAY AND MEBEL C. MCVAY AND PROPERTY NOW OR FORMERLY OF
MARTIN S. YODERS; THENCE FROM THE SAID PLACE OF BEGINNING, ALONG THE
LARGER TRACT OF LAND HEREINABOVE CONVEYED, SOUTH 19 DEGREES 15' WEST A
DISTANCE OF 660.08 FEET TO AN IRON PIPE; THENCE CONTINUING BY SAID TRACT
NORTH 76 DEGREES 46' WEST A DISTANCE OF 197.74 FEET TO AN IRON PIPE; THENCE
ALONG PROPERTY NOW OR FORMERLY OF ALBERT CLAYTON, NORTH 15 DEGREES 9'
EAST A DISTANCE OF 97 FEET TO AN IRON PIPE; THENCE CONTINUING BY SAME NORTH 2
DEGREES 7' WEST A DISTANCE OF 412.31 FEET TO A POINT; THENCE CONTINUING BY THE
SAME NORTH 5 DEGREES 7' WEST A DISTANCE OF 14.54 FEET TO A STAKE; THENCE ALONG
THE PROPERTY FORMERLY OF MABEL C. MCVAY, SOUTH 82 DEGREES 45' EAST A
DISTANCE OF 61.10 FEET TO A STAKE; THENCE CONTINUING BY SAID PROPERTY
FORMERLY OF MCVAY, NORTH 80 DEGREES 45' EAST A DISTANCE OF 227.50 FEET TO A
STAKE; THENCE CONTINUING BY THE SAME, NORTH 76 DEGREES 0' EAST A DISTANCE OF
119.69 FEET TO A STAKE, THE PLACE OF BEGINNING.

CONTAINING 3.632 ACRES AS PER SURVEY OF WM. G. WYLIE, C.E. DATED DECEMBER 9, 1941.

PARCEL THREE: BEGINNING AT AN IRON PIN AT A CORNER COMMON TO LANDS NOW OR FORMERLY OF ALEX A. BENTZ AND THE TRACT HEREBY CONVEYED, SAID PIN BEING SOUTH 46 DEGREES 41' WEST 45.17 FEET IN DISTANCE FROM AN IRON PIN WITHIN THE TRACT HEREBY CONVEYED; THENCE BY LAND NOW OR FORMERLY OF ALEX A. BENTZ, SOUTH 46 DEGREES 41' WEST, A DISTANCE OF 337.87 FEET TO AN IRON PIN ON THE SOUTHERLY RIGHT OF WAY LINE OF STATE ROAD 844; THENCE A DISTANCE OF 21.44 FEET TO THE CENTER LINE OF STATE ROUTE 844; THENCE FOLLOWING A CURVE TO THE RIGHT ALONG THE CENTER LINE OF SAID HIGHWAY, WITH A RADIUS OF 603.81' AN ARC LENGTH OF 277.16 FEET TO AN IRON PIN IN THE CENTER LINE OF SAID HIGHWAY; THENCE BY LAND NOW OR FORMERLY OF LINDSAY WAYCHOFF, NORTH 76 DEGREES EAST, A DISTANCE OF 354.29 FEET TO A POINT; THENCE BY SAME NORTH 80 DEGREES 45' EAST A DISTANCE OF 227.50 FEET TO A POINT; THENCE BY SAME SOUTH 82 DEGREES 45' EAST, A DISTANCE OF 61.10 FEET TO A POINT ON LINE OF LAND NOW OR FORMERLY OF LEROY MORGAN; THENCE BY LAND NOW OR FORMERLY OF LEROY MORGAN, NORTH 5 DEGREES 7' WEST, 109.1 FEET TO AN IRON PIN; THENCE BY LAND NOW OR FORMERLY OF ALEX A. BENTZ, 78 DEGREES 52' 35" WEST, A DISTANCE OF 197.20 FEET TO THE PLACE OF BEGINNING. CONTAINING 1.83 ACRES ACCORDING TO SURVEY OF MADE BY WARD DRAN IN JUNE, 1984.

ALSO KNOWN AS: 4115 JEFFERSON AVE, HOPEWELL TWP, PENNSYLVANIA 15301

## CERTIFICATE OF RESIDENCE

**TITLE OF DOCUMENT**
**LOAN MODIFICATION AGREEMENT**

**BETWEEN:**
**CORLEA H WARE** (assignor/Mortgagor/grantor)

**AND:**
**WELLS FARGO BANK, N.A.** (assignee/Mortgagee/grantee)

I do hereby certify that the precise address of the within named Mortgagee is:
**WELLS FARGO BANK, N.A.**
**3476 STATEVIEW BLVD, MAC# X7801-03K**
**FORT MILL, SC 29715**

By: _____

Print Name: _____ Griscelda Ruiz Espinosa
                Vice President Loan Documentation

Title: _____ 12/22/16

**WELLS FARGO** **HOME MORTGAGE**

Wells Fargo Home Mortgage
One Home Campus
Des Moines, IA 50328-0001

**ESCROW DISCLOSURE STATEMENT
AND NOTICE OF NEW MORTGAGE PAYMENT**

|  |  |
|---|---|
| **Loan Number:** |  |
| Next Payment Due Date: | 1/1/2017 |
| New Payment Effective Date: | 3/1/2018 |
| New Payment Amount: | $712.91 |
| Statement Date: | 3/12/2018 |
| Interest rate: | 4.6250% |
| Principal Balance: | $114,781.28 |

CORLEA H WARE
4115  JEFFERSON AVE
WASHINGTON, PA 15301

*property address if applicable*
4115 JEFFERSON AVE
HOPEWELL TWP, PA 15301

Each year, we review your escrow account to make sure the escrow portion of your scheduled mortgage payment covers your property taxes and/or insurance premiums.  Increases or decreases in your annual taxes and/or insurance premiums may cause your mortgage payment amount to change.  Here are the details of your most recent escrow account review. Please take a moment to look over your new escrow and mortgage payment details.

PLEASE NOTE:  This notice is being provided for informational purposes only.  As a result of at least one bankruptcy case filing that included the above referenced account, Wells Fargo is NOT attempting in any way to violate any provision of the United States Bankruptcy Code or to collect a debt (deficiency or otherwise) from any customer(s) who is impacted by an active bankruptcy case or has received a discharge, where the account was not otherwise reaffirmed or excepted from discharge.  THIS IS NOT A BILL OR A REQUEST FOR PAYMENT AS TO THESE CUSTOMER(S).

**New escrow and mortgage payment amount**
*New Payment Effective Date:*      **3/1/2018**

|  | Current Payment | New Payment |
|---|---|---|
| Principal &/or Interest | $525.27 | $525.27 |
| Escrow payment | $148.59 | $187.64 |
| Prorated shortage | $0.00 | $0.00 |
| Optional Insurance | $0.00 | $0.00 |
| **Total Payment** | **$673.86** | **$712.91** |

If you use one of our automatic payment options, we will adjust your electronic withdrawal to ensure your 03/01/18 payment is made in full.
If your current payment includes an amount to cover a previous escrow shortage, this amount will be added.  If your current payment includes an adjustment for extra funds you deposited to your escrow account this amount will be deducted.

Customer Service:
(800) 340-0473
Customer Service Hours:
Mon-Fri 7 a.m. - 8 p.m. Central Time

When you send in a check to make
your payment, Wells Fargo Bank, N.A.
may clear the check electronically.

The following information covers your projected escrow account activity from 03/01/18 to 02/01/19.

Projected escrow account disbursements
Annualized items to be paid from your escrow account ($):

| | |
|---|---|
| School Taxes | $866.03 |
| Hazard Insurance | $1,070.08 |
| County Taxes | $254.81 |
| City Taxes | $60.82 |

| | |
|---|---|
| Total disbursements | $2,251.74 |
| Scheduled escrow payment | $187.64 |

### Projected escrow account activity for the next 12 months

| | Anticipated payments $ | | | Escrow Balance $ | |
|---|---|---|---|---|---|
| Date | To Escrow | From Escrow | Description | Projected Escrow | Required Escrow |
| 03/01/18 | | | *Beginning Balance* | *$404.72* | *$1,313.54* |
| 03/01/18 | $187.64 | $254.81 | County Taxes | *$337.55* | *$1,246.37* |
| 04/01/18 | $187.64 | $0.00 | | *$525.19* | *$1,434.01* |
| 05/01/18 | $187.64 | $60.82 | City Taxes | *$652.01* | *$1,560.83* |
| 06/01/18 | $187.64 | $0.00 | | *$839.65* | *$1,748.47* |
| 07/01/18 | $187.64 | $1,070.08 | Hazard Insurance | *-$42.79* | *$866.03* |
| 08/01/18 | $187.64 | $0.00 | | *$144.85* | *$1,053.67* |
| 09/01/18 | $187.64 | $866.03 | School Taxes | *-$533.54* | *$375.28* |
| 10/01/18 | $187.64 | $0.00 | | *-$345.90* | *$562.92* |
| 11/01/18 | $187.64 | $0.00 | | *-$158.26* | *$750.56* |
| 12/01/18 | $187.64 | $0.00 | | *$29.38* | *$938.20* |
| 01/01/19 | $187.64 | $0.00 | | *$217.02* | *$1,125.84* |
| 02/01/19 | $187.64 | $0.00 | | *$404.66* | *$1,313.48* |
| **Total** | **2,251.68** | **2,251.74** | | | |

These calculations indicate the projected escrow balance will be less than the allowable low point.
The resulting shortage is         **-$908.82.**    An Escrow adjustment of                 **$908.82** is scheduled
to be repaid through bankruptcy.

The projected escrow account activity is based on the most recent tax and/or insurance information available as well as the assumption that your payments will be received as agreed.

Projected low point. The point during the annual period at which the projected escrow balance will reach its lowest point.
Required escrow balance.  To cover unanticipated disbursements, including increases to tax or insurance payments, there is a 2  month minimum escrow balance allowable by state law and/or your mortgage contract. This amount does not include mortgage insurance.

*Your 2-month minimum escrow balance is $375.28
*State law requires that this minimum escrow balance not exceed $375.28
*Note: If you have an adjustable rate mortgage (ARM), you will receive a notice about your new
 mortgage payment when your ARM rate is scheduled to change.

WELLS FARGO HOME MORTGAGE
PO Box 14547
Des Moines, IA 50306-3547

| Loan number: | |

| History  Time Frame | 02/28/2017  -  02/28/2018 | | | |

| Transaction Description | Date Applied | Escrow Disbursment(s): | Escrow Receipt(s): | Escrow Account Balance |
|---|---|---|---|---|
| **Starting Balance** | | | | **$323.10** |
| County Tax | 3/2/2017 | ($254.81) | | $68.29 |
| City Tax | 5/4/2017 | ($60.82) | | $7.47 |
| Escrow Deposit | 6/6/2017 | | $175.00 | $182.47 |
| Hazard Insurance | 7/3/2017 | ($1,070.08) | | ($887.61) |
| School Tax | 9/19/2017 | ($866.03) | | ($1,753.64) |
| *Payment Recovery Estimate* | Feb 2018 (Estimate) | | $2,158.36 | $404.72 |
| **Ending Totals/Balances** | | **($2,251.74)** | **$2,333.36** | **$404.72** |
| **Bankruptcy filed** | **02/28/18** | | | |